KENNEBEC WATER DISTRICT, In Equity,

*vs.*

CITY OF WATERVILLE, and others.

Kennebec.        Opinion March 3, 1902.

*Municipal & Const. Law.   Water Company.   Eminent Domain.   Jury Trial.   Stat.
1883, c. 175, § 4;  Spec. Laws, 1881, c. 141;  1887, c. 59;  1889, c. 339;
1891, c. 14 & 33;  1893, c. 352;  1899, c. 200.  · 14th Amend.
U. S. Const.   Art. XXII, Amend. Maine Const.*

1.  The special act c. 200 of the Special Laws of 1899, incorporating the territory and people constituting the city of Waterville and the contiguous Fairfield village corporation into a body politic and corporate for the purpose of supplying the inhabitants of such territory and the said municipalities and the towns of Benton and Winslow with pure water for domestic and municipal purposes, is within the legislative power, and is not forbidden by the constitution.   The act having been approved according to its terms by majority votes of the city of Waterville and the Fairfield corporation at legal meetings, the said territory and people have become a body politic and corporate under the name of the Kennebec Water District as provided in the act, and as such possess all the powers conferred by the act.

2.  The Kennebec Water District has by said act the power to acquire by purchase or by exercise of the power of eminent domain the entire plant, property, and franchise, etc., of the Maine Water Company within the district and the towns of Benton and Winslow by proceeding as set forth in the act.   The purpose for which this exercise of the power of eminent domain is conferred upon the Kennebec Water District is a public purpose, and the legislature is the sole judge whether the public exigency requires such condemnation.

3.  The trustees of the Kennebec Water District having failed to agree with the Maine Water Company upon the terms of purchase, the former is entitled as provided in the act to have three appraisers, appointed by the court sitting in equity, to appraise and fix the amount of the compensation to be paid by it to the Maine Water Company for its property so condemned.

4.  The Maine Water Company is not entitled by the constitution to a jury trial upon the question of the amount of such compensation, and the provision in the act for determining that amount by three appraisers appointed by the court instead of by a jury is within the legislative power.

5. The fact that by the act all other persons and corporations (other than the Maine Water Company) whose property is taken under the act can have damages or compensation assessed by a jury, does not bring the act in conflict with the XIV amendment of the U. S. constitution as denying the Maine Water Company the equal protection of the laws. The right of that company to just compensation is fully recognized. No greater right is conferred upon others. The only difference is in procedure.

6. The fact that the Maine Water Company has issued its bonds and mortgaged its property to secure them, and has also assumed fixed permanent obligations to Waterville and other municipalities to supply them with water, do not exempt its property and franchise from the power of eminent domain. These are mere incidents, to be considered in the appraisal.

7. The fact that the debt of the city of Waterville already exceeds the five per cent debt limit permitted to cities and towns by the constitution, does not prevent the operation of the act under which the Kennebec Water District is to proceed. Nothing lawfully done or authorized by the act can increase the municipal indebtedness of the city of Waterville.

On report. Bill sustained. Decree for plaintiff.

Bill in equity brought by the Kennebec Water District, a corporation, to procure, by virtue of the provisions of its charter, judicial appraisal and condemnation of the entire plant, property and franchises, rights and privileges of the Maine Water Company, a corporation, in Waterville, Fairfield, Benton and Winslow.

The case fully appears in the opinion.

*O. D. Baker, H. D. Eaton, G. K. Boutelle*, for plaintiff.

*D. P. Foster* for city of Waterville; *G. G. Weeks* for Fairfield Village Corporation; *C. F. Libby* for Portland Trust Company; *J. W. Symonds, D. W. Snow, C. S. Cook and C. L. Hutchinson; H. M. Heath & C. L. Andrews; W. T. Haines*, for Waterville Water Company, Maine Water Company, Portland Trust Co. and Maine Trust and Banking Company, defendants.

SITTING:   WISWELL, C. J., EMERY, STROUT, SAVAGE, FOGLER, JJ.

FOGLER, J.   This is a bill in equity brought by the Kennebec. Water District, a corporation, to procure, by virtue of the provisions of its charter, judicial appraisal and condemnation of the entire plant, property and franchises, rights and privileges of the Maine Water Company, a corporation. The case comes to this court, first, upon excep-

tions to a pro forma overruling by the justice below of the joint and several demurrer to the bill by the respondents; and, secondly, upon bill, answers and proof, upon the stipulation of the parties that if the exceptions are overruled, the court is to render such judgment and make such orders upon the bill, answers, admissions and so much of the proof as is pertinent and legally admissible, as the rights of the parties require.

The Kennebec Water District was incorporated by and under the provisions of chapter 200 of the Private Laws of 1899.

The first section of that act is as follows:

"The territory and people constituting the city of Waterville, and the Fairfield Village Corporation, shall constitute a body politic and corporate under the name of the Kennebec Water District, for the purpose of supplying the inhabitants of said district and the towns of Benton and Winslow and all said municipalities with pure water for domestic and municipal purposes."

Section two of the Act is as follows:

"Said district is hereby authorized, for the purposes aforesaid, to take and hold sufficient water of the Kennebec River, the Messalonskee stream, or its tributary lakes, or the Sebasticook River or its tributary lakes, and may take and hold by purchase or otherwise any land or real estate necessary for erecting dams, power, reservoirs or for preserving purity of the water and water shed, and for laying and maintaining aqueducts· for conducting, discharging, distributing and disposing of water."

By said act the district is authorized to lay and maintain through the streets and municipalities named in the act, all such pipes, aqueducts and fixtures as may be necessary for the objects for which it was incorporated; and the affairs of the water district shall be managed by a board of trustees composed of five members to be selected as provided in the act.

Section six and seven of said act are as follows:

"Section 6. Said water district is hereby authorized and empowered to acquire by purchase or by exercise of the right of eminent domain, which right is hereby expressly delegated to said district for said purpose, the entire plant, property and franchises,

rights and privileges now held by the Maine Water Company within said district and said towns of Benton and Winslow, including all lands, waters, water rights, dams, reservoirs, pipes, machinery, fixtures, hydrants, tools, and all apparatus and appliances owned by said company and used in supplying water in said district and towns and any other real estate in said district."

"Section 7. In case said trustees fail to agree with said Maine Water Company upon the terms of purchase of the above mentioned property on or before April fifteenth, eighteen hundred and ninety-nine, said water district through its trustees is hereby authorized to procure judicial appraisal and condemnation of said property by bill in equity filed in the supreme judicial court for the county of Kennebec for that purpose on or before May one, eighteen hundred and ninety-nine, and jurisdiction is hereby given to said court over the entire matter, including application of the purchase money, discharge of incumbrances and transfer of the property. For the purpose of fixing the valuation thereof it shall appoint three appraisers, one of whom shall be learned in the law and another skilled in hydraulic engineering, none of whom shall be residents of the counties of Kennebec or Somerset, and on payment or tender by said district of the amount fixed, and the performance of all other terms and conditions imposed by the court, said entire plant, property, franchises, rights and privileges shall become vested in said water district, and be free from all liens, mortgages and incumbrances theretofore created by the Waterville Water Company or the Maine Water Company. Said appraisers shall, upon hearing, fix the valuation of said plant, property and franchises at what they are fairly and equitably worth, so that said Maine Water Company shall receive just compensation for all the same. In their report said appraisers shall state the date as of which the valuation aforesaid was fixed, from which date interest on said award shall run, and all net rents and profits accruing thereafter shall belong to the water district. The court may confirm such report, or reject it, or recommit the same, or submit the subject matter thereof to a new board of appraisers."

The act further provides that all valid contracts existing between the Waterville Water Company, (of which the Maine Water Company

is the successor) or the Maine Water Company, and any persons or corporations, for supplying water within said district and the towns of Benton and Winslow, shall be assumed and carried out by said Kennebec Water District; that if any surplus of earnings shall remain at the end of each year, after payment of current expenses and interest, and after providing for a sinking fund for the final extinguishment of the funded debt of the corporation, shall be divided between the municipalities comprising the district in the same proportions as each contributed to the gross earnings of the district's water system; and that the act of incorporation shall take effect whenever approved by majority votes of the city of Waterville and of the Fairfield Village Corporation at legal meetings called under the provisions of the charters of said places.

It appears by records, made a part of the case, that the before-mentioned act incorporating the Kennebec Water District, was approved by the City of Waterville by a majority vote on the first day of April, 1899, and by the Fairfield Village Corporation, by a majority vote on the third day of the same month; that the trustees provided by the act of incorporation were duly selected and that such trustees duly organized as a board on the 13th day of April, 1899.

It is admitted "that the persons claiming to be trustees did fail to agree with the Maine Water Company on terms of purchase before the fifteenth day of April, 1899, although they made effort so to agree."

It is admitted by the plaintiff, "that the value of the property proposed to be taken by this process exceeds $100,000, and that the valuation and indebtedness of April 1, 1899, shall be taken as correct for all times involved in this proceeding."

The "Fifth," "Sixth," and "Seventh" paragraphs of the answer of the city of Waterville are as follows:

"Fifth:—That on the first day of April, A. D. 1899, the total valuation of taxable estates in the city of Waterville was $4,902,767, and the municipal indebtedness of said city of Waterville, apart from funds received in trust by said city, and from loans for the purpose of renewing existing loans, or for war, and from temporary loans to

be paid out of money raised by taxation during the year in which they were made, was $230,000."

"Sixth:—That it is illegal that the city of Waterville become a part of, or a member of said Kennebec Water District, as it thereby assumes the debts and liabilities of said Kennebec Water District, and the assumption of said debts and liabilities would be contrary to the provisions of Amendment One of the Constitution of the State of Maine."

"Seventh:—That the Act to incorporate the Kennebec Water District is unconstitutional and illegal, it being 'ultra vires' for the Legislature to impose debt or liability upon the city of Waterville contrary to Amendment One of the Constitution of the State of Maine."

The answer of the Fairfield Village Corporation alleges that on the first day of April, 1899, its assessed valuation of property within its limits was $766,005, and that on the same date its total indebtedness was $3233.80.

The Sixth paragraph of the joint and several answer of the Waterville Water Company, the Maine Water Company, the Portland Trust Company and the Maine Trust and Banking Company is as follows:—

"Sixth :—Still further answering, the said Waterville Water Company, and the said Maine Water Company, and the said Portland Trust Company, and the said Maine Trust and Banking Company, defendants, expressly deny the existence of any legal authority in the Kennebec Water District to acquire, either by purchase or by the exercise of eminent domain, the whole or any part of the plant, property, franchises, rights or privileges of the said Maine Water Company, and aver that even if the act of the Legislature in said fifteenth paragraph of the bill mentioned, contemplates any such purchase or exercise of eminent domain (which this defendant denies) such provision of said act, incorporating the Kennebec Water District, are in plain violation of the constitution of the State of Maine and are void."

The Waterville Water Company is a corporation organized under the provisions of chapter 141, Private and Special Laws of 1881, as

amended by chapter 59, Private and Special Laws of 1887, and chapter 14, Private and Special Laws of 1891, for the purpose of conveying to the towns of Waterville, Fairfield and Winslow a supply of pure water for domestic, manufactory and municipal purposes. During the year 1887, and 1888, said company constructed a system of water works and began the business of supplying water to said towns and their inhabitants. By its mortgage deed of trust dated October 17, 1887, said company conveyed to the Portland Trust Company, as trustees for its bond-holders and all other interested parties, its entire plant, property, franchises, rights, privileges and immunities to secure its bonds to the amount of $200,000. which bonds were issued and are all now outstanding.

The Maine Water Company is a corporation organized under the provisions of chapter 339, Private and Special Laws of 1889, as amended by chapter 33, Private and Special Laws of 1891, and chapter 352, Private and Special Laws of 1893, for the purpose of erecting, operating, buying, leasing and selling the water works named in the act. The act authorized the Maine Water Company to purchase and hold the property, capital stock, rights, privileges, immunities and franchises of several water companies therein named, including the Waterville Water Company. By the same act the water companies therein named, including the Waterville Water Company, were authorized to make the contracts, sales and transfers authorized by the act.

On the third day of July, 1891, the Waterville Water Company, by virtue of the authority granted by the act incorporating the Maine Water Company, sold and conveyed to the Maine Water Company all its property, capital stock, rights, privileges and immunities and franchises, except its franchise to be a corporation, and the Maine Water Company immediately entered into possession and still continues in possession thereof, and then and thereby said Maine Water Company, by the provisions of its charter, became subject to all the duties, restrictions and liabilities to which the Waterville Water Company was subject by reason of charter, contract, or general or special law of this state or otherwise.

July 22, 1891, the Maine Water Company executed a mortgage

to the Maine Trust and Banking Company as trustee for bond-holders, and all other interested parties of its entire property acquired from the Waterville Company, with all additions thereto, together with several other similar properties, located in various places in Maine and New Brunswick, to secure first consolidated mortgage bonds of said Maine Water Company to the amount of $2,000,000, of which bonds $582,000 are outstanding; and, of the remainder of such bonds, there are retained by said trustee $500,000 for future purchases of water plants by said Maine Water Company, and $918,000 for refunding of first mortgages on various water plants covered by said mortgage.

December 31, 1897, said Maine Water Company executed to said Maine Trust and Banking Company a second mortgage of the same property to secure $200,000 of second mortgage bonds of the Maine Water Company of which $89,000, are now outstanding.

It is objected, by counsel for the complainant, that neither the demurrer nor parts of the defendants' answers are sufficiently definite in their terms to cover the points of defense raised thereunder. The case is important, and we do not deem it advisable to decide it upon mere questions of pleading. We shall therefore consider and determine the cause upon its legal and constitutional merits.

To provisions of the legislative enactment creating the Kennebec Water District, and to the maintenance of this bill thereunder, various constitutional objections are raised by the defense.

I.   It is contended, by the defense, in behalf of the Maine Water Company, that the provision in the charter of the Kennebec Water District authorizing the latter to acquire, by the exercise of the power of eminent domain, the entire plant, property and franchises, rights and privileges held by the former company is unauthorized, and in violation of the constitution of the state.

Whether the public exigency requires the taking of private property for public uses is a legislative question, the determination of which by the legislature is final and conclusive. *Spring* v. *Russell*, 7 Maine, 273; *Allen* v. *Jay*, 60 Maine, 124, 11 Am. Rep. 185; *Concord R. R. Co.* v. *Greeley*, 17 N. H. 47. Whether the use for

which such taking is authorized is a public use is a judicial question for the determination of the court. *Allen* v. *Jay*, supra; *Talbot* v. *Hudson*, 16 Gray, 417; *Concord Railroad* v. *Greeley*, supra; *Olmstead* v. *Proprietors of Aqueduct*, 47 N. J. L. 311. The supply of water to the people of a municipality or territory is everywhere recognized as a public use.

It is to be observed that neither the charter of the Waterville Water Company, nor that of the Maine Water Company, confers exclusive franchises or rights upon their respective corporations; so that the legislature in granting the charter of the Kennebec Water District was, in that respect, under no restriction or embarrassment.

The power of eminent domain is not created by constitution or statute. It is an inherent attribute of sovereignty; it existed in the sovereign long before the adoption of any constitution. The article in our bill of rights, Art. 1, § 21, declaring that, "Private property shall not be taken for public uses without just compensation; nor unless public exigencies require it," does not confer the power, but by implication recognizes it as existing in the state.

The sovereign power of the state, by which is meant the people of the state in their sovereign capacity, acting through their representatives, the legislature, possesses and has the right to exercise the great power of eminent domain over all the private property and property rights within the limits of the state of whatever nature, corporeal or incorporeal, and by whomsoever owned, whether by individuals or corporations. The property of a corporation is not exempt from the exercise of this power, even though it may have been granted exclusive franchises and privileges. A legislature in granting a charter, cannot, even by express terms, however strong may be the language used, preclude another legislature, or even itself, from exercising the sovereign power of eminent domain over the charter thus granted and the property and rights acquired thereunder. The legislature cannot barter away the sovereign power of the state. All grants by the state, whether of property or rights or franchises, are subject to this power.

Though the granting by the legislature of a charter to a corporation and its acceptance by the corporation may be regarded as a con-

tract, the subsequent taking of the franchise and property of the corporation for public uses is not an impairment of the obligation of the contract. The provisions for just compensation for the franchise, as well as for the property and other rights, so taken, is a recognition of the contract.

The principles here laid down are sustained by the text writers and by the decisions of the courts in cases where the questions involved have been adjudged by the courts.

Judge Cooley, (Const. Lim. 5th Ed., 341) says: "It must be conceded under the authorities, that the state may grant exclusive franchises . . . . but the grant of an exclusive privilege will not prevent the legislature from exercising the power of eminent domain in respect thereto. Franchises, like every other thing of value and in the nature of property within the state are subject to this power; and any of their incidents may be taken away or themselves altogether annihilated by means of its exercise. . . . . Appropriating the franchise in such a case no more violates the obligations of a contract than does the appropriation of land which the state has granted under an express or implied agreement for quiet enjoyment by the grantee, but which nevertheless may be taken when the public need requires."

Mills on Eminent Domain says, § 41 : "While the legislature may not repeal or materially modify the charter of a corporation, unless the power is reserved, the property of the corporation is subject to condemnation for public uses. The taking of the property of a corporation is not an alteration, modification or repeal of its charter. It is the enforced purchase of its property."

Again, § 42 : "Franchises are held in subordination to the exercise of eminent domain and must yield to its proper exercise. The investiture of the franchise is not absolute. . . . . There is no distinction between corporeal and incorporeal property, and a franchise is as subject to the power of eminent domain as any other property."

To the same effect is Lewis on Eminent Domain, § 135, where it is said, "The property in connection with which the franchise is made available, and the franchise itself, are, of course, subject to the power of eminent domain like all other property."

In *State* v. *Noyes,* 47 Maine, 189, this court has recognized, at least by implication, the principles above laid down. The court say, p. 208: " But if the legislature in granting the charter to the former corporation, restrained itself from conferring a similar privilege upon another corporation of the same kind within a specified distance, the restriction would be binding, and could not be revoked, excepting under the high prerogative of sovereignty, and by making just compensation."

The Supreme Court of the United States in *Long Island Water Supply Company* v. *Brooklyn,* 166 U. S. 685, hold that a water supply system belonging to a corporation may be acquired by the public in the exercise of the power of eminent domain, on payment of just compensation. The court say, p. 689: "All private property is held subject to the demands of a public use. The constitutional guarantee of just compensation is not a limitation of the power to take, but only a condition of its exercise. Whenever public uses require, the government may appropriate any private property on the payment of just compensation. That the supply of water to a city is a public purpose cannot be doubted, and hence the condemnation of a water supply system must be recognized as within the unquestioned limits of the power of eminent domain. It matters not to whom the water supply system belongs, individual or corporation, or what franchises are connected with it—all may be taken for public uses upon payment of just compensation."

As further authorities on this question, we cite: *West River Bridge Co.* v. *Dix,* 6 Howard, 507; *Boston & Lowell R. R.* v. *Salem & Lowell R. R. Co.,* 2 Gray, 1; *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. R. Co.,* 17 Conn. 454, 466, 44 Am. Dec. 556; *White River Turnpike Co.* v. *Vermont Central R. Co.,* 21 Vt. 590; *Brainard* v. *Missisquoi R. R. Co.,* 48 Vt. 107; *In re City of Brooklyn,* 143 N. Y. 596; *Backus* v. *Lebanon,* 11 N. H. 19, 49 Am. Dec. 139.

It is urged, by the defense, that while one corporation chartered by the state is exercising its franchise and using its powers and property to perform its duties under its charter, another corporation cannot receive legislative authority to take the property and franchise of the

original company and employ them in the same business to do the same service.

There are authorities which support this proposition of the defense, but we think they are not in accord with the authorities above cited. As stated by Chancellor Walworth in *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige Chan. 45, 22 Am. Dec. 679, referring to the power of the state over all the property within its limits, " The eminent domain, the highest and most exact idea of property, remains in the government, or in the aggregate body of the people in their sovereign capacity, and they have the right to re-assume the possession of the property in the manner directed by the constitution and laws of the state whenever the public interest requires it.    This right of resumption may be exercised, not only where the safety, but also where the interest or expediency of the state is concerned."

The particular property needed for public use may be pointed out by the legislature, and the courts cannot review its determination in this respect.    Mills on Eminent Domain, Par. 11 ; *In re Union Ferry Co.*, 98 N. Y. 139.

In the case at bar the legislature, for reasons sufficient to itself, has determined that the supply of water to the people and territory and municipalities named in the charter of the Kennebec Water District can be furnished by that corporation, a corporation whose purposes are purely public, more in the interests of public welfare, than can be done by the Maine Water Company, a private corporation with public duties, but operated for private gain.    We do not feel authorized to inquire into or review this determination of the legislature.

Again, it is beyond question that the property and plant of a water company, owned and operated by a private corporation, and engaged, by virtue of its charter, in furnishing water to the people of a municipality, may be condemned and taken for public use by such municipality, just compensation being given, to which power to so condemn, and take has been granted by the legislature.    *In re City of Brooklyn*, 143 N. Y. 596, 26 L. R. A. 270; *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685.

The Kennebec Water District is a quasi municipal corporation.

By the first section of its charter it is created not only a body corporate, but also a body politic. Its purposes are purely public. It is invested with the power and charged with the duty of furnishing the territory and the people within its limits a supply of water. Its purposes and its duties in this respect, are as extensive as could be conferred by the legislature upon a municipality. It is an agency, so far as supplying water is concerned, in municipal government. We are of opinion that the Kennebec Water District has, under the grants contained in its charter the right to take the water system of the Maine Water Company, as would a municipality under a like grant.

II.    It is contended, in behalf of the Maine Water Company, that the act of the legislature in incorporating the Kennebec Water District is unconstitutional and void, inasmuch as it does not provide for a trial by jury in determining a just compensation for its property to be taken under the provisions of the act.

Section 21, Article I of the Constitution of this state provides that, "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." By this clause of the constitution no condition is placed upon the sovereign power of the state in the taking of private property for public uses under its inherent power of eminent domain, except that of giving just compensation for private property so taken. No tribunal or method is provided for determining what shall be a "just compensation." In the absence of any constitutional limitation to the contrary, the legislature may prescribe the terms, conditions and methods by which the compensation to be paid on a taking of private property for public use should be ascertained. The proceedings are in the nature of an inquisition on the part of the state, and are necessarily under its control. The state must provide for an assessment of damages by an impartial tribunal, and it may be a jury, or commission, or appraisers, or court without a jury. Mills on Eminent Domain, §§ 84-85. As stated in Lewis on Eminent Domain, § 313, "The legislature may provide such mode as it sees fit for ascertaining the compensation, provided that the tribunal is an impartial one and that the parties have an opportunity to be heard." The law as above

stated is fully supported by an array of authorities cited by the learned authors above named, and may be regarded as elementary.

The defense in the case at bar insists that § 20, Art. I of the Constitution of this state which provides that, "In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury except in cases where it has heretofore been otherwise practiced," imposes an additional limitation upon the exercise of the power of eminent domain to the effect that the citizen whose property is taken by virtue of that power, has the right to have his just compensation determined in a trial by jury.    The question involved is whether the section last above quoted applies in cases of private property taken for public uses.

This precise question has never been decided by this court, nor, so far as we are aware, has it ever been directly in issue in any proceedings before the court.    In a few instances the opinions of the court have adverted to the question, but in neither of those cases has there been a decision, or any necessity for a decision upon the question, and the views of the learned justices who drew the opinions do not conform with each other, but are in conflict.

The case of *Day* v. *Stetson*, 8 Maine, 365, was an action on the case by the proprietors of an ancient ferry against the defendant who had erected and maintained a ferry at the same place by virtue of a charter granted by act of legislature.    The act of incorporation authorized the corporators to erect piers, wharves, etc., as the Court of Sessions should adjudge convenient, making such compensation to the owner of the land or privileges so occupied and improved as the Court of Sessions might assess.    In the opinion of the court by Mr. Justice WESTON, referring to such provision for compensation, it is said, "If this provision does not secure to such owner his constitutional right of a trial by jury, the statute would afford no protection against a suit at law brought by him for the recovery of damages. And if the plaintiffs as owners of the land and privilege so taken and occupied by the defendant, had brought their action for damages, we do not decide that it might not have been maintained."    This does not appear to be even a dictum upon the question here involved, but

rather a reservation of expressing an opinion until a case should properly be presented.

In *Conant's Appeal*, 83 Maine, 42, the question before the court was the construction to be given to a statute enacted by the legislature. Mr. Justice EMERY in delivering the opinion says, "The Bill of Rights declares that in all cases concerning property, the parties shall have a right to a trial by jury, except in cases where it had theretofore been otherwise practiced. This right should be recognized in all such controversies between the citizen and the government. The spirit of legislation upon the subject has always been in harmony with the principle and, whatever the words of omission in the statute, we should be slow to infer any intention to violate the principle."

In *Cushman* v. *Smith*, 34 Maine, 247, it is stated in the opinion by SHEPLEY, C. J., "This provision of the constitution was evidently not intended to prevent the exercise of legislative power to prescribe the course of proceedings to be pursued to take private property and appropriate it to public use. Nor to prevent its exercise to determine the manner in which the value of such property should be ascertained and payment made or tendered. The legislative power is left entirely free from embarassment in the selection and arrangement of the measures to be adopted to take private property and appropriate it to public use, and to cause a just compensation to be made therefor."

In *Riche* v. *Bar Harbor Water Company*, 75 Maine, 91, it is stated in an opinion by APPLETON, C. J., "The mode and manner by which the individual, whose property is taken for public use, shall obtain compensation, is to be determined by the legislature. It cannot be determined in any other way."

In neither of these cases was the question here under discussion involved or decided.

In view of the absence of any adjudication upon the subject by this court, and in view of the conflicting dicta by the learned justices in the three cases last cited, the question whether the citizen whose property is taken for public use has the constitutional right to have

his compensation determined by a trial by jury, must be regarded as an open question in this jurisdiction.

The constitutional clause here involved is: "In all civil suits and in all controversies concerning property the parties shall have a right to trial by jury."

The trial by jury guaranteed by the constitution is a trial by a common law jury, impannelled and sitting in a court of competent jurisdiction, presided over by a judge of the court.

It is a significant fact, worthy of consideration in this connection, that in Massachusetts the right of a citizen whose land was taken for highway purposes, to have the damages assessed by a common law jury was not granted under the constitution of that state until 1873, Public Acts 1873, chapter 261; nor was such right granted in this state until 1883; Public Laws 1883, chapter 175, § 4. Prior to these respective enactments damages in such cases were assessed by a committee appointed by the court or by a sheriff's jury, so-called, a jury selected and summoned by the sheriff and presided over by him, or by some other person possessing no judicial functions. The validity or constitutionality of such proceedings do not seem to have been ever questioned in either state.

A proceeding for assessing the amount of just compensation for private property taken for public uses is not "a civil suit." It is a special proceeding, provided and authorized by the sovereign power by whose authority the property is taken, to determine a specific fact. The proceedings are in the nature of an inquisition on the part of the state. *Garrison* v. *City of New York*, 21 Wall. 204; Mills on Eminent Domain, § 84.

It has sometimes been called a proceeding in rem.' *St. Paul, Minneapolis & Manitoba Railway Co.* v. *City of Minneapolis*, 35 Minn. 141, 59 Am. Rep. 313; *Cupp* v. *Com. of Seneca County*, 19 Ohio St. 173.

The court of Massachusetts in *Henderson* v. *Adams*, 5 Cush. 610, decided that a complaint for flowing lands was not a demand which could be the subject of an action at law or a suit in equity, but was a particular statute mode of redress which must be pursued. "Suits" and "actions" are practically synonymous. "An action" is defined

by Lord Coke to be "a lawful demand of a man's right." In this state it has been held that, under a provision of the statute declaring that actions pending at the time of the passage or report of an act, are not affected thereby, that a petition pending before the county commissioners for a location of a highway was not an "action." *Webster* v. *County Coms.* 63 Maine, 27; and in *Belfast* v. *Fogler*, 71 Maine, 403, a proceeding in insolvency was not an action.

We are of the opinion that the defendant here, the Maine Water Company, is not entitled by the phrase, "in all civil suits" to have its compensation determined by a trial by jury.

Does the additional language of the same constitutional clause, "and in all controversies concerning property," give it that right?

The sovereign power of the state has the inherent power to take private property for public uses when the public exigencies require it. The only express constitutional condition upon the exercise of such power is that of giving just compensation. It has never been contended that in the matter of the taking of private property by the sovereign for public use, the citizen whose property it is proposed shall be taken, although it is a proceeding concerning property, has the right of a trial by jury upon the question of such taking. In that respect the will of the sovereign power is supreme, notwithstanding the constitutional right to a trial by jury, "in all controversies concerning property." In all cases in which private property is proposed to be taken for public uses, the sovereign power is bound to secure to the citizen whose property it is proposed to so take, just compensation, either by general legislative enactments, or by clear provision of the enabling act. There can be no controversy in this respect between the sovereign and the citizen.

In those states in which the constitution provides no tribunal or method for assessing compensation, the authorities almost uniformly hold that a trial by jury is not a matter of constitutional right.

In New York where the constitution requires compensation for private property taken for public uses, it was held in *Livingston* v. *Mayor of New York*, 8 Wend. 85, 22 Am. Dec. 622, that the trial by jury secured by the constitution applies only to cases of trial of issues of fact in civil and criminal proceedings in courts of justice

and has no relation to assessment of damages of the owners of property taken for streets or other public use, and that the mode of ascertaining such damages belongs to the legislature. The same doctrine is held in Minnesota under like constitutional provisions, in *Ames* v. *Lake Superior & Mississippi R. R. Co.,* 21 Minn. 241, in which the court say, (p. 293): "Proceedings under the right of eminent domain, to ascertain the compensation to be paid in taking private property for public use, have never been considered as actions of law within the meaning of constitutional provisions preserving the right of trial by jury; and except when such proceedings are expressly mentioned in state constitutions, the decisions are uniform that they do not come within the constitution."

The same is held in *Penn. R. R. Co.* v. *Lutheran Congregation,* 53 Pa. St. 445; *Long Island Water Supply Co.* v. *City of Brooklyn,* 166 U. S. 695; *Garrison* v. *City of New York,* 21 Wall. 204; *Scudder* v. *Trenton & Delaware Falls Co.,* 1 N. J. Eq. 694, 23 Am. Dec. 756; *In re Lower Chatham,* 35 N. J. L. 497.

III.    The third section of the act incorporating the Kennebec Water District provides, that if any person sustaining damages and said corporation shall not mutually agree upon the sum to be paid therefor, such person may cause his damages to be ascertained in the same manner and under the same conditions, restrictions and limitations as are or may be prescribed in case of damages by the laying out of highways. This gives to the owner of property taken the ultimate right upon appeal to have his damages assessed by a jury. Section five of the same act provides that if the trustees of the Water District fail to agree with the Maine Water Company, the damages shall be assessed by appraisers to be appointed by the court upon a bill in equity to be instituted by the Water District.

It is claimed by the defense that the different tribunals thus provided for the assessment of damages is a violation of the Fourteenth Amendment of the Federal Constitution which provides that no state "shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." In the case at bar the act of incor-

poration does not deny to any person, or to the Maine Water Company, the equal protection of the laws. It provides to each person who sustains damages and to the Maine Water Company just compensation. There is no discrimination or inequality in that respect. No different rule is prescribed for the estimation of just compensation in case of individuals, and in case of the Maine Water Company. The act provides for a competent and impartial tribunal in each case with the right of the property owner to appear and be heard. We think that this is all that is required by the terms of the amendment to the Federal Constitution above referred to. The only difference as to the award of compensation is one of procedure. As has already been shown the legislature has entire discretion to designate any impartial tribunal to assess compensation, whether jury, commissioners or appraisers. We perceive no reason for precluding the legislature from prescribing in the same act for the assessment of compensation by different tribunals for different classes of property taken, nor are we aware of any decision of any court holding that the legislature is so precluded. Ordinarily the compensation for tangible property taken may properly be determined by a jury; but when, as in the case at bar, the property and franchises of a large corporation are taken for public uses, and the value, not only of tangible property, but of the franchise, rights, privileges and contracts are factors in determining the amount of compensation to be paid, the legislature may well determine that commissioners or appraisers, the members of which have peculiar skill and experience in such matters, can, better than a jury, do exact justice to the corporation whose property has been condemned and taken.

We are of the opinion that the act here in question by prescribing a different tribunal for fixing the amount of just compensation to the Maine Water Company than that prescribed for fixing the compensation to other parties is not "without due process of law," and does not deny to any person or to the Maine Water Company, " the equal protection of the laws," and is not repugnant to the Fourteenth Amendment of the Federal Constitution.

IV. It is urged, as another ground of defense, that the charter of

the Kennebec Water District is unconstitutional and void for the reason that it impairs the obligations of contracts. The argument is that the Waterville Water Company has made valid and now existing contracts for supplying water to the city of Waterville and other municipalities; that the act of 1899, if carried out, necessarily destroys the ability of the Waterville Water Company or the Maine Water Company, its successor, to keep its contracts, either with Waterville or the other towns.

We cannot sustain this ground of defense. This precise question was directly in issue and was decided adversely to the contention of the defense in *Long Island Water Supply Co.* v. *City of Brooklyn,* supra, where it is held, p. 690, referring to the argument, as made here by the defense, "the vice of the argument is two-fold. First, it ignores the fact that the contract is a mere incident to the tangible property; that it is the latter, which, being fitted for public uses is condemned. And while the company, by being deprived of its tangible property is unable to perform its part of the contract, and therefore can make no demand upon the town for performance of its part, it still is true that the contract is not the thing which is sought to be condemned, and its impairment, if impairment there be, is a mere consequence of the appropriation of the tangible property. Second, a contract is property and, like any other property, may be taken under condemnation proceedings for public use." And it is further stated, p. 691: "The true view is that the condemnation proceedings do not impair the contract, do not break its obligations, but appropriate it, as they do the tangible property of the company, to public uses." See also *West River Bridge,* supra, p. 532; Cooley's Const. Lim. 5th Ed., p. 346, et. seq.

Could the contention of the defense on this point be sustained, then the existence of the contract would withdraw the property, during the life of the contract, from the scope of the power of eminent domain.

V.    The city of Waterville, a defendant in this case, contends that the provisions of the act creating the Kennebec Water District, if carried out, will increase the indebtedness of that city beyond its con-

stitutional debt limit and is, therefore, in contravention to Amendment I, Art. XXII of the Constitution of Maine, which reads as follows:

"No city or town shall hereafter create any debt or liability, which singly, or in the aggregate with previous debts or liabilities, shall exceed five per centum of the last regular valuation of said city or town."

It appears from the report that the valuation of the city of Waterville, April 1, 1899, was $4,902,767, and that its net indebtedness on that day was $230,000.

It is admitted by the plaintiff corporation that the valuation and indebtedness of the city on April 1, 1899, should be taken as correct for all times involved in this proceeding; and that the value of the property proposed to be taken by this process exceeds $100,000.

Applying well known rules of constitutional construction to the language of Amendment I, above quoted, it is obvious that it applies only to cities and towns. The language of the amendment is clear, plain and unambiguous. It can apply to cities and towns only, and not to any other form of municipal or quasi municipal bodies.

The question is, therefore, whether a debt or liability created and incurred by the Water District will be a debt or liability of the city of Waterville.

The Kennebec Water District is a quasi municipal corporation. It is declared to be such by § 10 of its enabling act. The powers, the rights and the property of the new corporation rest exclusively in it, and in no degree in the city of Waterville.

That the legislature has authority to create the Water District as a quasi municipal corporation cannot be successfully questioned. In *People* v. *Salomon*, 51 Ill. 37, in which was involved the authority of the legislature of Illinois to create the South Park Commissioners, the court, sustaining the authority of the legislature, declares, "There is no prohibition which we have been able to discover, and we have been pointed to none, against the creation by the legislature, of every conceivable description of corporate authority, and when created to endow them with all the faculties and attributes of other pre-existing corporate authorities. Thus, for example, there is nothing in the constitution of this state to prevent the legislature

from placing the police department of Chicago, or its fire department, or its water works, under the control of an authority which may be constituted for such purpose by a vote of the people, and endow it with the power to assess and collect taxes for their support, and confide to it their control and government."

In the case at bar, the power to take private property for public use is granted to the Water District and not to the City of Waterville; compensation for the property so taken is to be paid by the Water District; the title to the property which may be acquired by voluntary or enforced purchase is to vest in the District; to provide funds for the payment of property purchased or taken the district is authorized to issue bonds which, by the express terms of its charter, shall be legal obligations of the Water District.

The charter of the Water District confers no authority on the part of that corporation to create or incur indebtedness against the city, nor does it provide that the city shall be liable for any debts or liabilities incurred by the Water District.

In *Wilson* v. *Board of Trustees*, 133 Ill. 443, a case parallel in principle to that here at bar, it is held that the constitutional limitation upon the extent of corporate indebtedness applies to each municipal corporation singly, and where one such corporation may partially embrace the same territory as others, it may contract corporate indebtedness without regard to the indebtedness of any other corporate body embraced wholly or in part in its territory.

The same doctrine is held in the late case of *Tuttle* v. *Polk*, 92 Iowa, 433. The court says: "It [the constitution] recognizes the county and other political and municipal corporations as being distinct entities. Although none can incur an indebtedness in excess of five per centum of the value of the taxable property within its limits, yet the same territory, and, therefore, the same property, may be included within the limits of different corporations, as those of a county, city or town, and be subject to taxation for the debt of each."

As bearing upon the point here involved, we cite further, *C. B. & Q. R. R. Co.* v. *County of Otoe*, 16 Wall. 667; *Pattison* v. *Supervisors of Yuba Co.* 13 Cal., 175; *Hallenback* v. *Hahn*, 2 Neb. 377; *Owners of Lands* v. *The People*, 113 Ill. 296.

We hold that the indebtedness of the city of Waterville can, in no event, be increased by the provisions of the charter of the plaintiff corporation, and that the objections of the defense in this respect cannot be sustained.

VI.     The reasoning and the authorities cited above on the question of debt limitation, apply with equal or greater force, adversely to the objection of the defense that the provisions of the plaintiff's charter authorize double taxation.     The charter nowhere authorizes the Water District to assess or collect a tax upon the people or property included within its limits.     As has already been shown, the city of Waterville is not liable for any indebtedness or liabilities of the District, and cannot therefore assess a tax on account thereof.

> *Exception to the overruling of the demurrer overruled.     Bill sustained with costs.     Case remanded to the court below for further proceedings in accordance with this opinion.*