**ACE AMBULANCE SERVICE, INC.**

**v.**

**The CITY OF AUGUSTA.**

Supreme Judicial Court of Maine.

May 15, 1975.

John L. Hamilton, Lewiston, for plaintiff.

Sanborn, Moreshead, Schade & Dawson, by Richard B. Sanborn, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

This appeal involves the dismissal of a complaint brought in Superior Court, Androscoggin County, by the appellant, Ace Ambulance Service, Inc., against the City

of Augusta and the City of Gardiner, the County of Kennebec and the Southern Kennebec Valley Regional Planning Commission. We deny the appeal.

The appellant, a private ambulance service operating throughout the Southern Kennebec Valley Region (which includes the City of Augusta), alleged that the defendants

"jointly and individually plan to organize a non-profit ambulance service which will compete with plaintiff at lower prices and which will thereby cause losses to plaintiff in the form of diminution in the value of current capital investment, lost revenue and lost profits."

The appellant in its complaint seeks (1) to have the defendants enjoined from organizing, subsidizing or in any other manner undertaking the provision of ambulance service and, (2) in the alternative, the appellant seeks compensation for deprivation of its property which it alleged would be caused by fulfillment of the defendants' plans.

The defendant, The City of Augusta, in its answer, admitted that it is involved in plans to carry on a public ambulance service, claiming clear legislative authorization under 30 M.R.S.A. § 5105(7).[1]

The presiding Justice granted a motion to dismiss the complaint as to all the defendants except the County of Kennebec for failure to state a claim upon which relief can be granted. M.R.C.P., Rule 12(b)(6).[2] The appellant appealed from the dismissal only as to the defendant City of Augusta.

The nature of an appeal from a Rule 12(b)(6) dismissal requires a full inspection of the claims which might entitle a plaintiff-appellant to relief. The sufficiency of a complaint is measured by a standard less harsh than that applied upon the filing of a demurrer under our former practice. We have said that a complaint should not be dismissed under Rule 12(b)(6)

" '*unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*' " Richards v. Ellis, Me., 233 A.2d 37, 38 (1967) (quoting from 2A Moore, § 12.08) (emphasis in the original).[3]

*See also* Cohen v. Bowdoin, Me., 288 A.2d 106 (1972); New England Merchants National Bank v. McKinnon, Me., 307 A.2d 225 (1973); Field, McKusick and Wroth, Maine Civil Practice, Vol. I, § 12:11.

Here, as in *Richards*, the almost obvious issues concern broad principles of substantive law. The present complaint alleges an invasion into the field of ambulance service by a municipal corporation in competition with existing private service. The defendant City answers that it was authorized to enter this field by a statute enacted by the Legislature. Although not specifically pleaded, we find it implicit in the

---

1. "§ 5105. Health and welfare

A municipality may raise or appropriate money:

. . . . .

7. Ambulance. Providing for a public ambulance and garage for it, or supporting an ambulance service serving its residents."

2. In compliance with the directive of M.R.C.P., Rule 54(b) the presiding Justice made an express determination that there was no just reason for delaying the final judgments in favor of these three defendants pending the disposition of the action against the remaining defendant, the County of Kennebec.

3. The authors of Field, McKusick and Wroth, Maine Civil Practice Volume I, § 12:11 wisely cautions the bar concerning a statement of similar liberal effect by the United States Supreme Court, saying:

"This can scarcely mean that dismissal will result only if there is an affirmative showing in his complaint that he cannot recover. What is intended, as demonstrated by the cases cited, is that if fair notice of the claim is given, the complaint is not fatally defective because of the failure to allege in nonconclusory form every fact essential to recovery. The 'showing' that the pleader is entitled to relief must be made, but it may be in general terms which would not have survived a demurrer under prior practice."

complaint that the plaintiff disputes the constitutionality of a statute which purports to endow a municipality with such unconditional authority.

It is also discernible from the complaint, although also not specifically alleged, that the plaintiff claims, alternatively, an entitlement to money damges on the theory that the City's entrance into the field will constitute a taking of part of the plaintiff's existing business in the nature of eminent domain. The City does not dispute that this has been its understanding of the plaintiff's alternative allegation.

Our problem then becomes one of the application of substantive law.

*Constitutionality of the Statute*

■ On appeal, the plaintiff urges us that the Legislature may constitutionally permit a municipality to enter this private sector in competition with existing private service only if it is determined that the existing local private service is inadequate.[4] A municipality, we are reminded, may raise and appropriate money for proper public purposes only. Laughlin v. City of Portland, 111 Me. 486, 490, 90 A. 318, 320 (1914). The defendant concedes that providing emergency ambulance service to injured and sick persons in need of immediate medical attention is a proper public service as such—but argues that under the rule established in *Laughlin* a particular municipality may not engage in this activity, even with statutory authorization, if the needs of its citizens are already being served adequately by private individuals. We do not so construe *Laughlin*.

■ *Laughlin* has long been considered definitive as to the Legislature's authority to authorize municipalities to enter fields of endeavor already occupied by commercial enterprise. *Laughlin* reasoned that the authority for a municipality to raise and appropriate money is akin to the right to take private property by eminent domain and is limited by art. I, § 21 of the Maine Constitution. Public funds, the Court said, can be spent only for "public purposes" and only as "the public exigencies require it." 111 Me. at 490, 90 A. at 320. The Legislature's decision that the purpose for which private property is to be taken is a *public use*, although presumably correct, is subject to judicial review.

On the other hand, the question of determining *exigency* has long been considered to be a political decision for the Legislature to make, free from judicial review (unless it can be said there is no rational basis upon which exigency could be found). Hayford v. Bangor, 102 Me. 340, 343, 66 A. 731, 732 (1907); Kennebec Water District v. City of Waterville, 96 Me. 234, 52 A. 774 (1902). *See also* In re Bangor Hydro-Electric Company, Me., 314 A. 2d 800 (1974).

■ We adhere to the *Laughlin* Court's acceptance of the double test—that is, the necessity of the presence of both public use and exigency—based upon the analogous relationship of this situation to that of eminent domain. It is necessary to remember, however, that in authorizing a taking by eminent domain the Legislature may make a finding of public use and delegate the determination of exigency to the municipality or public-service corporation which exercises the taking authority (Roberts v. Portland Water District, 124 Me. 63, 126 A. 162 (1924)) or the Legislature may itself determine both the proper nature of the use *and* the exigency of the taking. Riche v. Bar Harbor Water Company, 75 Me. 91, 96 (1883); Hayford v. City of Bangor, 102 Me. 340, 66 A. 731 (1907); In re Bangor Hydro-Electric Company, Me., supra at 805. Similarly, the Legislature may condition its grant of authority of municipal appropriation for

---

4. The plaintiff, in argument, also asserts that *if* the constiutionality of the statute is saved by interpreting the statute to require proof of inadequacy of local existing service, then the City has the burden of proof as to such inadequacy. This claim becomes moot as a result of our resolution of the constitutional issue.

public purposes upon the existence of local conditions or it may make a general determination of exigency itself.

. In Hayford v. City of Bangor, supra, the Legislature had by general law authorized municipalities of more than 1000 inhabitants to take, through action by their municipal officers, suitable lands for public parks, public squares or a public library building. The *Hayford* Court said that

" . . . the municipal officers do not pass upon the question of necessity. That has already been done by the Legislature before their duties begin." 102 Me. at 343, 66 A. at 732.

█ In the present situation, the Legislature itself, in enacting 30 M.R.S.A. § 5105(7), has found both that providing an ambulance service is a proper public purpose and that the exigencies justify authorizing municipalities to raise and appropriate money for this purpose.[5] No authority to determine the exigency justifying the expenditure of public moneys remained to be delegated to the municipalities nor was the exercise of the power granted by the Act conditioned upon any finding of specific local lack of ambulance service. The Legislature left to the various municipal appropriating bodies only the political decision of the appropriateness of their entering into the field of ambulance service.

The statute does not speak to the situation which may prevail at certain places at certain times. It is a general statute reflecting a determination that the furnishing of ambulance service is a proper public purpose and that in view of its critical nature and the uncertainties of the future, municipalities should be free to decide whether their particular circumstances make it appropriate for *them* to assume a responsibility for furnishing it.

This, we understand, is the underlying rationale of the *Laughlin* opinion. The Legislature in 1903 had authorized municipalities to maintain fuel yards and sell fuel to their inhabitants at cost. The plaintiffs sought to enjoin the City of Portland from acting under this statute contending that the legislature exceeded its constitutional powers in attempting to authorize the use of public funds for what the plaintiffs considered to be a private purpose. The Court made an exhaustive study of the existing authority concerning the distinction between private and public use and reiterated its acceptance of the definition of public use laid down by Judge Cooley in his work on Constitutional Limitations, 6th ed., at 655, to wit:

" 'That only can be considered a public use where the government is supplying its own needs or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare which on account of their peculiar character and the difficulty—perhaps impossibility—of making provisions for them otherwise, is alike proper, useful and needful for the government to provide.' " 111 Me. at 498, 90 A. at 323. *See* Brown v. Gerald, 100 Me. 351, 370, 61 A. 785, 793 (1905).

The *Laughlin* Court applied a two-pronged test—that the subject matter must be one of public necessity, convenience and welfare (which, the Court said, clearly includes fuel), and that it must be of such a nature that the difficulty which individuals have in providing it for themselves constitutes a situation of exigency. The Court found the second test to be met by existing circumstances which it proceeded to explain:

"In the case of fuel the practical difficulty is caused by the existence of monopolistic combinations. The mining,

---

5. The present situation is analogous in this respect to that found when the Legislature authorizes the taking of certain specific property for public use, finding *both* that the use is public and that exigency requires it, but leaving to local voters the decision whether to implement the authority granted. Kennebec Water District v. City of Waterville, 96 Me. 234, 52 A. 774 (1902).

transportation and distribution of coal, has, in the process of industrial development, fallen into the hands of these combinations to such an extent that the greater part of the supply is in the absolute control of a few. The difficulty and practical impossibility of obtaining an adequate supply for private needs at times in the past, and the consequent suffering among the people, especially in the more populous cities, are matters of history, and this difficulty may as well be caused by unreasonable prices as by shortage in quantity. All this is a matter of common knowledge and cannot be overlooked by the court. The supply of water may be inadequate from one cause, that of fuel from another, but out of each arises the condition which renders the furnishing of it by the municipality a public use." 111 Me. at 499, 90 A. at 323.

The Court considered the Legislature to have thus found an exigency to exist as to the distribution of fuel which the Court could not say was

"wrong beyond all rational doubt, and therefore under the well settled rules of constitutional construction it should not be disturbed." 111 Me. at 500, 90 A. at 324.

We particularly note that the *Laughlin* Court considered the question of exigency in the general state-wide context without proof of whether any particular unavailability of fuel prevailed in the City of Portland. The Court upheld the constitutionality of the statute and refused to enjoin the City's action.[6]

The furnishing of non-profit ambulance service is not exactly analogous to the non-profit sale of fuel. Fuel is a commodity, available under normal conditions through established commercial outlets. While ambulance service in general may not occupy the opposite end of the spectrum of public service where we find such traditional public services as police protection, fire protection, and sewage disposal, it at least lies in a middle area between the essential commodity and traditional services. Certainly, it is difficult to distinguish, as a public use, between the expenditure of public funds for maintaining a hospital and the spending such funds to transport emergency cases to the hospital in a manner conducive to the preservation of life and health. It seems to us that the *Laughlin* rule applies with even greater force as to ambulance service.

The Legislature, presumably aware of constitutional principles and intending to observe them (Laughlin v. City of Portland, supra), was evidently satisfied that furnishing ambulance service to its inhabitants was a proper public use. This finding is reviewable by us under well established procedures.

"[A]ll reasonable presumptions are in favor of the validity of such determinations by the legislature." 111 Me. at 490, 90 A. at 319.

*See also* In re Bangor Hydro-Electric Company, Me., 314 A.2d 800, 803 (1974). The plaintiff does not dispute that maintaining a public *emergency* ambulance service is a proper public use and this is also our view. The plaintiff does, however, urge us that *non*-emergency ambulance transportation is an unjustified use of public funds. While there is no record before us as to the social, economic and

---

6. We recently applied the *Laughlin* rule to an ordinance of the city of Portland which limited the grave markers to be used in a section of a municipal cemetery to a certain type which was sold by the cemetery. There was no specific enabling legislation. The Court was satisfied that such activity did not constitute a public use and rejected the holding of the Justice below that the municipal sales constitute an incidental operation of the cemetery. Morrison v. City of Portland, Me., 286 A.2d 334 (1972).

We, of course, intimate no opinion as to whether the proposed action of the city in this present action would or would not be ultra vires if there were no statute authorizing the activity.

governmental factors which specifically entered into the Legislature's decision, the problem is of such a nature as to entitle us to draw upon matters of common knowledge, as the *Laughlin* court did. We have no doubt that in many instances it cannot readily be determined whether the need for a particular ambulance transportation is of an emergency or a non-emergency nature, at least by a layman, and the attempt to distinguish the two situations statutorily appears impractical and dangerous. Then, too, for a person needing to be transported (although not faced with an emergency) and unable to be transported safely except by ambulance, the need for such service is also critical to health and welfare. The specialized nature of the vehicles involved and the services rendered combined with the sparse distribution of our population in much of the State increase the likelihood of incomplete coverage of public needs.

The Legislature evidently concluded that it was unwise to attempt to distinguish between emergency and non-emergency service.

We find no error in our review of the Legislature's decision as to public use.

The Legislature also evidently found that exigent circumstances justified its enabling action. It cannot be said that there can be no rational bases for such a conclusion. Today, in some municipalities, private operators may find it economically feasible to provide such a service adequately. Next week or next month they may not. The Legislature has apparently concluded that the availability of adequate ambulance service is so vital to public health and welfare that municipalities throughout the State should be permitted to assume the responsibility for providing it if and when their respective appropriating bodies elect to do so.

We find no constitutional infirmity in the statute.

*Plaintiff's Claim for Entitlement to Compensation*

■ The defendant also pressed as an alternative issue a claim that it should be compensated for the reduction of the value of its business which it asserts it will suffer if and when the City's proposed public ambulance service enters into competition with the plaintiff's private service. Again, we find that the plaintiff has not stated a claim upon which relief can be granted.

The fact that it has not alleged a "taking" which is compensable under our law is fatal to this aspect of the plaintiff's action. The plaintiff does not allege an actual physical taking of its property of a type which would entitle it to "just compensation" [7] but only that it will lose part of the value of its business because of the City's competition. As likely as this result may be, it does not, on the facts alleged here, give rise to an entitlement to compensation. We know of no principle of law which would require a city to reimburse private business for loss of profits suffered as a result of lawful competing municipal activity, at least in the absence of statutory requirement.

A contrary philosophy was expressed in *Laughlin*. The Court said:

"Nor is the fact that in operation the act may tend to lessen the profits of a few private dealers or even force them from business, a matter of consideration for the court. 'It is for the legislature to determine from time to time what laws and regulations are necessary or expedient for the defense and benefit of the people, and however inconvenienced, restricted or even damaged, particular persons and corporations may be, such general laws and regulations are held valid unless there can be pointed out, some provision in the State or United States Constitution, which clearly pro-

---

7. The Maine Constitution, art. I, § 21.

hibits them.' Opinion of the Justices, 103 Me. 506, 69 A. 627, 19 L.R.A.(N.S.) 422, 13 Ann.Cas. 745." State v. Laughlin, supra, 111 Me. at 501, 90 A. at 324.

■ Even in the situation existing when a municipality undertakes legislatively authorized action to acquire title to land, loss of business profits is not legally compensable in the absence of statutory authorization. Opinion of the Justices, 157 Me. 104, 170 A.2d 647 (1961); Nichols on Eminent Domain, 3d Ed., § 16.101[s].

The entry must be:

Appeal denied.

All Justices concur.