INHABITANTS OF BOOTHBAY

*vs.*

INHABITANTS OF BOOTHBAY HARBOR

Lincoln.  Opinion, May 16, 1952.

*Saul H. Sheriff,*
*Robert W. Donovan,* for Plaintiff.

*David E. Moulton,*
*Alexander A. LaFleur,*
*Locke, Campbell, Reid & Hebert,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.   This is an action in a plea of debt by the town of Boothbay to recover taxes assessed upon certain property in Boothbay forming a part of the water system owned by the defendant town of Boothbay Harbor.  The case is before us on exceptions to the acceptance of the report of the referee who found for the plaintiff.

The issue is:   Was the property taxable?  The regularity and sufficiency of the assessment, commitment and other steps leading to this action are not here questioned.  The answer lies in the meaning and application of the statute, which reads in part as follows:

"The following property and polls are exempt from taxation:

'I.   The property of the United States so far as the taxation of such property is prohibited under the constitution and laws of the United States, and the property of this state, and the property of any public municipal corporation of this state appropriated to public uses, *if located within the corporate limits and confines of such public municipal corporation, and also the pipes, fixtures, hydrants, conduits, gatehouses, pumping stations, reservoirs, and dams, used only for reservoir purposes, of public municipal corporations engaged in supplying water, power, or light, if located outside of the limits of such public municipal corporations, . . . .*"

R. S. Ch. 81, Sec. 6, Par. I, as amended by P. L. 1945, Ch. 90.

The property assessed admittedly is within the classification of "pipes, fixtures — etc." (italicized above), is owned by the town of Boothbay Harbor, a corporation engaged in supplying water, and is located outside of the territorial limits of Boothbay Harbor.  Tax exemption depends upon whether the defendant has met the remaining conditions of the statute.

We must now ask: (1) Was Boothbay Harbor a public municipal corporation with respect to the property assessed? (2) Is it a condition of the statute that tax exempt property be "appropriated to public uses"? (3) If so, was the property assessed so appropriated?

The Boothbay Harbor water system has its source of supply in Boothbay. It serves and is designed to serve the communities and inhabitants of Boothbay Harbor, Boothbay and Squirrel Island, a summer colony within the town of Southport, with water for fire protection and for commercial and domestic uses.

We are not here concerned with an incidental disposal of a surplus of water by Boothbay Harbor outside of its limits. The referee well said: "The outside service is substantial and, in the absence of evidence to the contrary, indicates a plant and system fitted and intended to serve the several towns." It appears that approximately 28½% of the gross revenue comes from the service in Boothbay and Squirrel Island.

The authority and power of Boothbay Harbor with respect to the water system are derived from a series of Acts of the Legislature, of which the most important is "An Act authorizing the town of Boothbay Harbor to purchase and succeed to the rights of the Boothbay and Boothbay Harbor Water Company." *P. & S. L. 1895, Ch. 56 as amended.* Prior to 1895 we find that in "An Act to divide the town of Boothbay and incorporate the town of Boothbay Harbor" Boothbay Harbor was authorized to contract "for the supply of water for all domestic, sanitary, municipal and commercial purposes"—and to maintain and operate "such a system of water works in its corporate capacity"—. *P. & S. L. 1889, Ch. 381.*

The Boothbay and Boothbay Harbor Water Company was incorporated in 1891 "for the purpose of conveying to and

supplying the inhabitants of Boothbay and Boothbay Harbor, adjacent islands and neighboring territory, with water for all domestic, sanitary, municipal and commercial purposes"—. *P. & S. L. 1891, Ch. 241.*

In the 1895 law Boothbay Harbor was authorized and empowered to purchase and own stock in the Boothbay and Boothbay Harbor Water Company and also to acquire "and exercise all the rights, property, franchises and privileges of said corporation." The town was given the right of eminent domain. The general control and management of the system was placed in the hands of commissioners elected by the town.

It is in Section 2 of this Act as amended that we find fully set forth the authority and power of the defendant town. The section now reads:

> "Sect. 2. Said town is further authorized and empowered, in case it obtains control of said corporation either directly by purchase, or indirectly through ownership of stock, to take water from Adams pond in the town of Boothbay or from any other ponds or supply within said towns of Boothbay and Boothbay Harbor, sufficient for all domestic, sanitary, municipal and commercial purposes, and to take and convey the same, through the *towns of Boothbay and Boothbay Harbor,* and to Squirrel Island. Said town is also authorized and empowered, to sell water to the town of Boothbay and to any company, individual, firm or corporation in the towns of Boothbay and Boothbay Harbor, and Squirrel Island."

When originally enacted the section did not include the clause "or from any other ponds or supply within said towns of Boothbay and Boothbay Harbor" added in 1937, and ended with the underscored words "towns of Boothbay and Boothbay Harbor." In 1903 the section was amended by adding:

"and Southport, and to Squirrel Island, Mouse Island, and other adjacent islands. Said town is also authorized and empowered, to sell water to the towns of Boothbay and Southport, and to any company, individual, firm or corporation in either of said towns, or either of the adjacent islands."

In 1923 Southport, Mouse Island and other adjacent islands were stricken from the section under a law significantly entitled "An Act to Relieve the Town of Boothbay Harbor from All Liability and Duty to Sell or Furnish Water for Any Purpose to a Portion of the Town of Southport and the Inhabitants Thereof, by Reason of Ch. 203, P. & S. L. of 1903." The section, except as amended in 1937 to enlarge the available sources of supply, has since remained without change. *P. & S. L. 1903, Ch. 203; P. & S. L. 1923, Ch. 7; P. & S. L. 1937, Ch. 52, Sec. 1.*

In 1894 Boothbay Harbor constructed a water system under the authority of the 1889 Act, and shortly after the 1895 Act became effective, it acquired the charter rights of the water company. For over a half century Boothbay Harbor has owned, maintained and operated the water system.

Returning to the questions we will answer the second and third at the outset. In our view only property appropriated to public uses is tax exempt under the statute; and further the property here assessed was so appropriated.

The argument of the defendant is that even if the property was not appropriated to public uses, it would nevertheless be tax free. That is, the defendant's position is that ownership, and ownership alone, by Boothbay Harbor of the given types of property outside of the limits of the town determined the exemption, and "public use" was not a test.

In *City of Bangor v. City of Brewer,* 142 Me. 6, 45 A. 2d 434 (1946) will be found a complete study of the history and of the purpose and effect of Paragraph I, which it is unnecessary here to repeat. It is sufficient to note that the

Legislature added to Paragraph I of the Statute in 1903 the words "and the property of any public municipal corporation of this state, appropriated to public uses," and in 1911 the words italicized. *P. L. 1903, Ch. 46; P. L. 1911, Ch. 120.*

The words "appropriated to public uses" with relation to taxation were well understood in 1903. For example, the property of a private water company was "appropriated and devoted to a public use," and hence could be exempt from tax. *City of Portland v. Portland Water Company,* 67 Me. 135 (1877). A village corporation was held a public municipal corporation and the village hall "exempted by implication from the general provisions of the statute in relation to taxation, as property appropriated to public uses." *Camden v. Camden Village Corp.,* 77 Me. 530, at 534, 1 A. 689 (1885).

In the *Camden case* the use was in the exercise of a function of government, and in the *Portland case* for purposes of a public utility. In either event with reference to taxation, the use was "public." It was with this meaning that the words were carried into the statute in 1903. See *Kennebec Water District v. City of Waterville,* 96 Me. 234, 52 A. 774 (1902); *City of Augusta v. Augusta Water District,* 101 Me. 148, 63 A. 663 (1906); *Laughlin v. City of Portland,* 111 Me. 486, 90 A. 318 (1914).

The 1911 amendment (the words italicized) created a new test for property outside the corporate limits without, however, destroying the test of "public use." First, there clearly appears an intention to limit and not to enlarge exemptions, or in other words, to subject to tax certain property previously exempt. *Whiting v. Lubec,* 121 Me. 121, 115 A. 896 (1922). Second, the exempt outside property of a public municipal corporation "engaged in supplying water, etc." must form part of a utility system for either corporate or municipal purposes.

The property assessed in fact was appropriated to public uses. It was included within a public utility system. Had it been owned by a privately owned utility, or by a water district, for example, the "public uses" would be unchallenged. No more can it be here said that a use otherwise public became private by reason of ownership by a town.

The decisive question remains: Was Boothbay Harbor a public municipal corporation with respect to the property assessed? The referee in his report said:

"So far as the defendant Town employs its system for town uses and uses of its own inhabitants, it is functioning as a public municipal corporation. So far as it furnishes water to the customers of both towns and inhabitants thereof outside its own boundaries, it assumes for taxation purposes the role of a private corporation engaged in a commercial enterprise for its own profit."

And again:

"The case presents the question of taxation where there is a mixed use, that is, a public use and private use by the municipality, of the same property. Is such property taxable? I think it is."

We do not understand the referee concluded that the property was not appropriated to public uses within the meaning we give to the term. He had in mind, we believe, the differences in taxation based on ownership by a public municipal corporation ("public use") and on ownership by a privately owned utility ("private use").

By comparison with other situations we may better understand the nature of the defendant as owner of the property here assessed. Boothbay Harbor obviously is neither a water company, nor a water district. Nor does it own the stock of a public utility corporation, with control and management by representatives of the town, as in *Greaves v. Houlton Water Co.,* 140 Me. 158, 34 A. 2d 693 (1943) (first

Greaves case), and *Greaves v. Houlton Water Co.*, 143 Me. 207, 59 A. 2d 217 (1948) (second Greaves case). It is equally clear that Boothbay Harbor is a public municipal corporation, at least in so far as water service for the town and its inhabitants within its own borders is concerned. *Woodward v. Water District*, 116 Me. 86, 100 A. 317 (1917), and *Laughlin v. City of Portland, supra* at 493. Boothbay Harbor unquestionably could hold tax free in Boothbay the types of property italicized in the quotation from the statute, provided the service was limited to the territory of Boothbay Harbor. In such event the situation would be parallel with that found in *Whiting v. Lubec, supra*, and the property would be tax free. Incidental service outside of Boothbay Harbor would not destroy the exemption.

In our view Boothbay Harbor acted as a public municipal corporation and not as a private corporation in supplying water to Boothbay and Squirrel Island.

If a water company owned the system of course the property would be taxable. If, however, a water district of the conventional type covering, let us say, all or part of Boothbay Harbor with authority to serve Boothbay, Boothbay Harbor and Squirrel Island, was the owner, the property would be tax exempt.

In *City of Augusta v. Augusta Water District, supra*, in 1906 the Court first applied the 1903 amendment to Paragraph I of the statute, *supra*. The water district was held a public municipal corporation, and accordingly its property appropriated to public uses was exempt from tax. The decision had been foreshadowed by *Kennebec Water District v. City of Waterville, supra*, in 1902, in which the Court at page 245 defined the water district in terms of the municipality as follows:

> "The Kennebec Water District is a quasi municipal corporation. By the first section of its char-

ter it is created not only a body corporate, but also a body politic. Its purposes are purely public. It is invested with the power and charged with the duty of furnishing the territory and the people within its limits a supply of water. Its purposes and its duties in this respect, are as extensive as could be conferred by the legislature upon a municipality. It is an agency, so far as supplying water is concerned, in municipal government. We are of opinion that the Kennebec Water District has, under the grants contained in its charter the right to take the water system of the Maine Water Company, as would a municipality under a like grant."

It is a general and well established rule that apart from clear legislative authority, a municipal corporation cannot extend its services (except incidentally) beyond its borders. As Justice Manser well said:

"The primary objects to be accomplished by a municipal corporation are to promote the welfare and public interest of its inhabitants and not the promotion of the interests of those residing outside its corporate boundaries."

*First Greaves case, supra,* at page 162.

There is nothing in our view, however, to prevent the State from providing for a water supply for the area here served by a privately owned utility, a quasi municipal corporation such as a water district, or through the agency of an existing municipal corporation. The private utility would not qualify as a public municipal corporation, and so its property would be taxable. But if the water district is tax free, why should not the town have like exemption?

The Court has considered the 1911 amendment to Paragraph I of the statute (the words italicized), *supra,* in four cases.

*Whiting v. Lubec, supra,* in 1922, and *City of Bangor v. City of Brewer, supra,* in 1946 do not touch upon our par-

ticular problem. In each case the question was whether the property was within the types exempt by the statute. Admittedly such is the situation before us. In both cases apparently the property of town A. located in town B. was used only in connection with services within A. No question of service outside the owning or taxed municipality arose.

We come to the two cases of *Greaves v. Houlton Water Co., supra.* The town of Houlton owned the entire capital stock of the Houlton Water Co. and managed and controlled the company through directors elected by the town. Poles and transmission lines used for distribution of electricity in the town of Hodgdon were held taxable in the *First Greaves case* in 1943. The Court said at page 165:

> "We, therefore, conclude that, by legislative action and intendment, the corporate entity of the Houlton Water Company has been continued and maintained separate and distinct from the town of Houlton; that the corporation has been endowed with authority to act in a dual capacity, one as a public municipal corporation so far as the town of Houlton and its inhabitants are concerned, and the other as a private enterprise in furnishing electric current to a dozen other towns and their inhabitants for their convenience and for its private gain. The duties, powers, rights and immunities of the municipality of Houlton have not been extended by legislative grant beyond its own boundaries. It has been given no right to assume any municipal function as to outside territory. There is no reason, under the circumstances of this case, why the Houlton Water Company should be exempt from taxation upon its property, used solely in the transmission and distribution of electricity outside the limits of the town of Houlton."

In the *Second Greaves case, supra,* in 1948 the property was held tax exempt on the strength of a 1943 statute that the Houlton Water Company "shall hereafter be determined

for all purposes of taxation a public municipal corporation." Between the *first* and *second Greaves cases* there were apparently no changes in the ownership or in the method of doing business by the Houlton Water Company. The only change was the statute which the Court said was intended to give, and did give, tax exemption to the company.

The underlying theory of the *second Greaves case* is not that Houlton, through the water company, had in some manner been authorized to extend, or had extended, its *municipal* powers into Hodgdon, but that the water company operating under its charter in Hodgdon and elsewhere was given tax exemption by the simple method of definition. That is, tax exemption in Hodgdon and elsewhere outside of Houlton (and indeed the same could be said within Houlton as well) rested directly upon the act of the Legislature and was not in any way derived through the town of Houlton. *City of Portland v. Portland Water Company, supra.*

The basis for decision lies in the opinion in the *first Greaves case*. The Court there stressed the fact that Houlton had neither rights nor obligations to supply the surrounding area and "It (Houlton) has been given no right to assume any municipal function as to outside territory." (Page 165)

The referee in his report says:

> "The private acts put in evidence did not change the business, carried on outside the boundaries of the defendant Town for a profit, into a municipal public function. These acts gave authority to sell water in the towns outside its boundaries but imposed no duty to furnish such a service."

With this view, urged by the plaintiff, we cannot agree. Under the private and special legislation discussed above from 1895, and particularly from 1903 to date, Boothbay Harbor has at all times been authorized and empowered to

own and operate the water system serving an outside area. Whether the defendant town was compelled by statute to construct and operate the present system, or any system, is not the point. The fact is that in the exercise of the legislative grant, Boothbay Harbor has undertaken to serve the outside areas. Surely no one will say that Boothbay Harbor is not now under an obligation and duty as a public utility to render such service. There is no escape for Boothbay Harbor on the ground it is acting beyond the authority given by the Legislature.

The case comes to this:

For many years under authority of the Legislature, Boothbay Harbor has owned and operated a water system with a source of supply in Boothbay serving Boothbay Harbor, Boothbay and Squirrel Island. The property assessed in Boothbay is within the types exempt from tax by statute and is appropriated to public uses in the sense that the property of a private public utility is so appropriated. Within its own limits Boothbay Harbor is obviously a public municipal corporation. The supplying of water for municipal and domestic purposes is a proper function of a public municipal corporation. The Legislature can entrust such service to an agency of its own choosing—the water district here and the municipality there, or of course it may be left to the privately owned utility.

Whether it is wise for the Legislature to place a town in the business of a public utility outside of its own territorial limits is a matter for the Legislature, not for the Court, to determine. It has done so repeatedly in the case of water districts. For example see *City of Augusta v. Augusta Water District,* and *Kennebec Water District v. City of Waterville, supra.* It is suggested that if the property here is tax exempt, there is nothing to prevent a town under statutory authority from owning and operating a utility anywhere in the State with freedom from tax. In view of

the history of development of water and other utilities in our State, we doubt if the problem suggested will arise. In any event it is not necessary that it be answered now. The property was not taxable.

The entry will be

*Exceptions sustained.*