180 N.W.2d 398 (1970)
In the Matter of the Creation of HEARTLAND CONSUMERS POWER DISTRICT.
Jerome B. LAMMERS and Dennis Sunderman, Appellants,
v.
HEARTLAND CONSUMERS POWER DISTRICT, Respondent.
No. 10718.
Supreme Court of South Dakota.
October 7, 1970.
*399 John H. Zimmer of Zimmer & Richter, Parker, Lammers & Lammers, Madison, for appellants.
Vincent J. Protsch and Thomas R. Pardy, of Mumford, Protsch, Sage & Pardy, Howard, Leo P. Flynn, Milbank, for respondent.
BIEGELMEIER, Judge (on reassignment).
This is an appeal from an order of the circuit court approving the formation of Heartland Consumers Power District and presents some questions with reference to the statutes[1] under which the court held the hearing and entered its order. The Consumer Power District Act, now Consumer Power Districts Law, will be referred to herein as the Act. It provides in general that nonprofit, public service, utility districts may be organized for the purpose of providing electric energy throughout the State of South Dakota; that when created it would be a political subdivision of the state and created only by election and the procedure provided therein. It required the filing of an original petition signed by 5% of the qualified electors of the proposed district in rural areas in the office of the clerk of courts in the county in which the principal place of business of the district was to be located and certified copies in similar offices in other counties where the proposed district could extend.
Upon request a judge of the circuit court was authorized to hear the petition and set a time for hearing thereon with notice to be published in all counties involved. As no question has been raised with reference to the contents, execution and filing of the petition or notice of hearing thereon, reference to sections, relative thereto are unnecessary to be stated in this opinion. At this hearing the court heard the evidence, considered the record and entered *400 findings of fact, conclusions of law and an order approving the formation of the district. The basis for considering constitutional law questions will first be stated.

I.
The Constitution of South Dakota is not a grant but a limitation upon the lawmaking power of the state legislature and it may enact any law not expressly or inferentially prohibited by the state or federal constitutions. In State ex rel. Wagner v. Summers, 33 S.D. 40, 144 N.W. 730, 50 L.R.A.,N.S., 206, Ann.Cas.1916B, 860, the court wrote:
"no legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity."
See also Kramer v. Bon Homme County, 83 S.D. 112, 155 N.W.2d 777; Clem v. City of Yankton, 83 S.D. 386, 160 N.W.2d 125. As stated in Clem, in order to determine that an act is unconstitutional we must find some provision that prohibits the enactment of a statute rather than for grants of such power. This is not to say this power is unlimited. See Nelson v. City of Miller, 83 S.D. 611, 163 N.W.2d 533, and discussion in White Eagle Oil & Refining Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, where the court left undecided the constitutional question of the state engaging in the sale of gasoline.

II.
By thorough briefs the parties have first discussed the authority of the state legislature to create this public corporation and political subdivision of the state with reference to the police power. In State v. Central Lumber Co., 24 S.D. 136, 123 N.W. 504, this court, quoting Justice Shaw, wrote that the police power is
"The power vested in the Legislature by the Constitution to make * * * all manner of wholesome and reasonable laws * * * either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the (state)".
It is in accord with the generally accepted definition. 16 Am.Jur.2d, Constitutional Law, §§ 250, 262, 306.
A district organized under the Act of May 23, 1921, Cal.Stats.1921, p. 245, as amended was described as an agency of and a validly constituted political subdivision of the State of California duly empowered to finance the public function of supplying its inhabitants with light, heat and power. Pacific Gas & Electric Co. v. Sacramento Municipal Utility Dist., 9 Cir., 1937, 92 F.2d 365. The court there further held the district had power to levy general taxes against the property of the district, including that of a private competitor, an issue not here present.
Public power districts have been authorized by legislation in several states[2] and no decision has been brought to our attention which, in the absence of constitutional prohibition, holds the state may not either engage in the business of manufacture and sale of electric power or create agencies for the purpose. See 29 C.J.S. Electricity § 6. The generation and distribution of electric power has long been recognized as a public use and purpose. Carstens v. Public Utility Dist. No. 1, 8 Wash.2d 136, 111 P.2d 583, 586; State v. *401 Lincoln County Power Dist. No. 1, 60 Nev. 401, 111 P.2d 528.
The Nevada court had before it the constitutionality of "The Power District Law", Ch. 72, Laws of Nevada, 1935. Section 4 provided for the creation of such districts either by the governing body of a municipality proposed to be included in a district, by a petition of 10% of the electors thereof or by the public service commission of Nevada of its own action. Other sections gave the commission authority to consolidate or dissolve such districts. The district was empowered to acquire, construct and operate a utility to furnish and sell heat, light and power service to the public, the state or any municipality or public institution. It provided for its officers, authority to issue revenue bonds and otherwise operate such business. The validity and constitutionality of this law being in issue, the court's opinion followed much the reasoning of this court in the Kramer and Clem opinions, supra. After writing the familiar guides that every presumption favors validity of a statute, that the legislature possessed the whole legislative powers of the people except so far as limited by the constitution and its plenary right to legislate upon every subject unless there is a denial of that right by the constitution, the court wrote:
"There is no constitutional limitation on the power of the Legislature of Nevada to create municipal corporations and confer on them such functions it considers necessary or expedient. * *
"Therefore, power districts created pursuant to the provisions of Chapter 72, Laws of 1935, are municipal corporations. * * *
"Power districts, as provided for in Chapter 72, Laws of 1935, are also political subdivisions of the state, created to make available to the public, to any municipality, the state, and any public institution, an abundant supply of electricity at the lowest cost consistent with sound economy and prudent management for use for the purpose of raising the standard of living * * *
"The supplying of electric energy to the inhabitants of a state, county, or municipal corporation is a legitimate municipal or public purpose.
"* * * Power districts, authorized by Chapter 72, Laws of 1935, are created for the sole purpose of assisting the state in the performance of its governmental function of distributing heat, light and power among its people without profit." State v. Lincoln County Power Dist. No. 1, 60 Nev. 401, 111 P.2d 528.
The many cases cited by the court throughout the opinion are omitted.
Approving the authority of Public Utility District No. 2 to institute eminent domain proceedings for the purpose of condemning the plants, lines and facilities for the distribution of electric current of a private utility as a public use and the important part it serves in our lives, the court in State ex rel. Washington Water Power Co. v. Superior Court for Grant County, 8 Wash.2d 122, 111 P.2d 577, said:
"The very nature of the business of furnishing electric energy determines that the use to which the condemned property is to be put is a public one. Under our present way of living, electricity is essentially necessary in order to enable our citizens to carry on their every day activities and pursue their accustomed manner of living."
The corporations authorized or created by the legislature are not private corporations but are public corporations, Platte Valley Pub. Pow. and Irr. Dist. v. Lincoln County, 144 Neb. 584, 14 N.W.2d 202, subject to the plenary control of the legislature. Rural public power districts in Nebraska are designated as both public corporations and political subdivisions of that state. York County Rural Public Power District v. O'Connor, 172 Neb. 602, 111 N.W.2d 376. It has been stated that in the exercise of such power the legislature may *402 authorize, limit, control or even destroy such corporations. Wittler v. Baumgartner, 180 Neb. 446, 144 N.W.2d 62, 67.
Determination whether a statutory purpose is public or private is much a matter of policy and wisdom of the legislature and in making such a decision it is vested with a large discretion with which the court should not interfere unless its action is clearly evasive. Clem v. City of Yankton, 83 S.D. 386, 160 N.W.2d 125.
The manufacture and sale of electric power is a governmental function, and, in the absence of a constitutional prohibition, the state may, through its agencies, engage in that business for the benefit of its people, and the legislature may create agencies or districts for that purpose. Clarke v. South Carolina Public Service Authority, 177 S.C. 427, 181 S.E. 481; Creech v. South Carolina Public Service Authority, 200 S.C. 127, 20 S.E.2d 645; State v. Lincoln County Power Dist. No. 1, 60 Nev. 401, 111 P.2d 528; Inhabitants of Boothbay v. Inhabitants of Boothbay Harbor, 148 Me. 31, 88 A.2d 820. See also Pacific Gas & Electric Co. v. Sacramento Municipal Utility Dist., 9 Cir., 1937, 92 F.2d 365; Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N.W. 558; and Gaynor v. Marohn, 268 N.Y. 417, 198 N.E. 13, where it is said "That the state itself may build and operate light and power plants is not questioned."
The constitutionality of Ch. 842 of the Laws of 1935 of New York was challenged in Gaynor v. Marohn, supra. The Court of Appeals in an opinion by Judge Crane wrote:
"This law under discussion creates a light, heat, and power district in the county of Albany for the purpose of purchasing or establishing lighting and power plants whereby the inhabitants of the district may be furnished with light, heat and power through publicly owned and operated utilities.
"* * * I find nothing in the Constitution which limits the Legislature in imposing upon counties or towns or any other district the right and authority, as an agent of the state to carry out and perform a state function or purpose.
* * * That the state itself may build and operate light and power plants is not questioned. * * *
"Very early in our law the authorities recognized the value of creating districts for certain special purposes where the usual governmental agencies would not be effectual. * * *
"In a word, we may state the law to be this: The state may authorize cities, villages, or counties, as it has done by the provisions of the General Municipal Law, to establish lighting and power plants and systems. So, too, it may create power districts for this purpose, whether they embrace a county, or a portion of a county, or many counties (omitting discussion of limiting its right to tax only benefited property)."
Upon the authorities cited, we conclude the legislature had the power to enact "The Consumers Power District Act" authorizing the creation of public power districts.
The Act may be sustained for another reason. The legislature has for many years empowered municipalities to construct, operate and maintain systems to provide light, heat and power, with authority to purchase electric current from, and sell it to, points without the municipality. SDCL 9-39-1 and source note.[3] This has been done without any specific authority found in our constitution, yet the constitutionality of, and the power of the legislature to enact, these statutes has never been *403 challenged in South Dakota. Nor does it seem they could be for it is no longer questioned that the state has the power to confer upon municipalities the right to establish an electric plant to furnish light and power to light public places and private houses and buildings. 26 Am.Jur.2d, Electricity, Gas, and Steam, § 33; City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393; Hodgins v. Bay City, 1909, 156 Mich. 687, 121 N.W. 274; Bank of Commerce v. Huddleston, 172 Ark. 999, 291 S. W. 422, 50 A.L.R. 1202; McQuillin Municipal Corporations, 3rd Ed., §§ 35.06, 35.10; Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929; Rhyne, Municipal Law § 23-1.
The court in Hodgins said "that light, like water, is a necessity for all, and the furnishing thereof was so far for a public purpose as to sustain the power of the Legislature to confer upon municipalities the right to furnish both". If a necessity in 1909, how much more so in 1969 when this action was commenced, not only for urban dwellers but for rural as well. In this day of mechanization, loss of electric power is both an individual and national catastrophy. That has evidently been cause for enactment of our rural "Electric Co-Operative Law", SDCL 47-21. See also 29 C.J.S. Electricity § 10(2). It is illogical for the legislature to have power to authorize a municipality, which it created, to construct, operate and maintain electric plants and not have power to enter that field itself or by some other agency of its creation.

III.
Appellants urge the Act is not a proper legislative enactment under the police power claiming the source of all police power is public convenience and necessity and the circuit court is not allowed to consider that or duplication of existing services at the hearing. SDCL 49-35-11 does so read. It further provides that at the hearing the only questions to be determined by the judge are (1) whether or not the petition conforms to the provisions of the chapter and (2) whether "or not the district is formed in good faith for the purpose of providing for equality of distribution of electric energy to all of the people and areas of the district at the lowest obtainable cost on public service, nonprofit, co-operative principles so far as practicable." To put appellants' contention in another way, their claim is that the court or some other body must be given the power to determine whether public convenience and necessity requires the formation of a public corporation.
The granting or denying of a certificate of public convenience or necessity is primarily a legislative question. Application of Dakota Transportation Co., 67 S.D. 221, 291 N.W. 589. Because they may form a separate and distinct class from private corporations the legislature may exempt municipalities or other public agencies from the jurisdiction of a public utilities commission or similar body. Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929, note 947, affirmed in 257 U.S. 66, 42 S.Ct. 24, 66 L.Ed. 131, a leading case upon this question and Pennington v. Town of Sumner, 222 Iowa 1005, 270 N.W. 629, 109 A.L. R. 355, note, p. 369, and cases cited. The legislature did this in SDCL 49-37-17 by providing the "South Dakota public utilities commission shall have no jurisdiction over the districts". That commission theretofore had no jurisdiction over any light or power companies in this state, and the legislature merely made that declaration as to these power districts. Those interested in the history and discussion of these questions may turn to the following articles: Reese, State Regulation of Municipally Owned Electric Utilities, 7 Geo. Washington L.R. 557; Kneier, State Supervision Over Municipally Owned Utilities, 49 Columbia L.R. 180, and 41 Yale L.J. 121. The charts there show the divergence of control and lack of it in many states. See also Rhyne, Municipal Law, § 23-8; 43 Am. Jur., Public Utilities & Services, §§ 11, 195; *404 26 Am.Jur.2d, Electricity, Gas, and Steam, § 11; and McQuillin, Municipal Corporations, § 34.33.
Rather than have a board or commission hear and determine whether the petitioners should be granted a certificate of public convenience and necessity under appropriate laws and guidelines, the legislature has determined from its own methods of investigation, hearings, knowledge and experience that the need exists. As it had the power to authorize a board or commission to hear and determine this question, it also had the power to exempt them from such requirement or waive hearing on that issue and provide for the granting of the right to engage in the construction and operation of electric power plants subject only to the court finding the two other requirements were present and the favorable vote by the electors of the district.[4] Nor is this procedure a preference over the formation of a private corporation by individuals as they may form such a corporation by a much simpler method of filing articles of incorporation in the office of the secertary of state and upon issuance of a certificate the corporation is formed. SDCL 49-33.
What has been written disposes of appellants' argument the Act is not a proper legislative enactment under the police power under their claim all such power is based on public convenience and necessity and SDCL 49-35-11 declares that question shall not be considered nor involved in the decision.

IV.
Having concluded the legislature had authority to create this public power district under its police power, it is not necessary to rely on South Dakota Constitution, Art. XIII, § 12, which provides as follows:
"The manufacture, distribution and sale of electric current for heating, lighting and power purposes are hereby declared to be works of public necessity and importance in which the state may engage, and suitable laws may be enacted by the Legislature to empower the state to acquire, by purchase or appropriation all lands, easements, rights of way, tracks, structures, equipment, cars, motive power, implements, facilities, instrumentalties and material incident or necessary to the acquisition, ownership, control, development and operation of the water powers of this state, and to carry this provision into effect: provided, however, that no expenditure of money for the purposes enumerated in this section shall be made except by a vote of two-thirds of the members elect of each branch of the Legislature."
While it may well be argued that Art. XIII, § 12, with its powers and limitations applies only to water power projects (it is not contended the proposed district contemplates such a project here) and so is not applicable, it is unnecessary to determine that point for reasons about to be stated. The court in State ex rel. Wagner v. Summers, 33 S.D. 40, 144 N.W. 730, 50 L.R.A., N.S., 206, Ann.Cas.1916B, 860, had before it the same basic issue. By § 1 of Art. III of the State Constitution adopted in 1889 all legislative power was vested in the legislature. In 1898 the electors adopted an amendment covering features popularly known as the initiative and referendum. It was contended that § 39 of Ch. 86, Laws of 1907 authorizing the referendum of a law, ordinance or resolution of a city, was broader than the constitutional reservation and thus null and void. The court there *405 wrote principles thereafter followed in the Kramer v. Bon Homme County and Clem v. City of Yankton opinions, supra, that
"It is also elementary that * * * the state Constitution is not a grant of power, but is a limitation upon the powers of the Legislature. * * *
"The object of the constitutional amendment, as well as its effect * * * was not to grant the power to the Legislature to authorize the referendum. The Legislature already had that power.
* * * We conclude, therefore, that the Legislature did have the power, independently of the constitutional amendment of 1898, to enact said section 39".
The court then proceeded to examine the "only limitation imposed by" the 1898 amendment to determine its scope. Assuming, without deciding, the question that Art. XIII, § 12 applies to the Act under consideration the only limitation is no expenditure of money for the purposes enumerated therein shall be made except by the vote of two-thirds of the members of each branch of the legislature.
The Act provides for issuance by the district of its revenue bonds and as no expenditure of money of the state is authorized (see Clem v. City of Yankton, 83 S.D. 386, 160 N.W.2d 125, and McFarland v. Barron, 83 S.D. 639, 164 N.W.2d 607) and as the two-thirds vote only applied to that clause, this limitation has no application. Appellants' quotation of the judges' answer to Question 1 in In Re Opinion of the Judges, 43 S.D. 635 at 644, 177 N.W. 812 at 815, which states "The only limitation is the requirement that two-thirds of the members elect * * * assent thereto", is not in conflict with that conclusion as Question 1 (43 S.D. 641, 177 N.W. 814) is, "How, if at all, is the state limited in the pledge of its credit for the purpose of engaging in enterprises specially authorized by sections 12 and 13 of article 13 of the Constitution?"

V.
It is urged that the Act is unconstitutional for the reason it imposes administrative duties on circuit courts and is thus a violation of the S.D. Constitution. Art. II divides the powers of government of the state in three distinct departments; Art. V, § 1 vests judicial powers in the supreme, circuit and other courts and Art. V, § 35 states no judge of the supreme or circuit courts shall be elected to other than a judicial office, or be eligible thereto, during the term for which he was elected such judge. These provisions are quoted in Nelson v. City of Miller, 83 S.D. 611, 163 N.W.2d 533, where the court gave recognition to the presumption that favors the validity of legislative action and that no statute should be held unconstitutional unless its infraction of constitutional principles is so plain to admit of no reasonable doubt. Kramer v. Bon Homme County, 83 S.D. 112, 155 N.W.2d 777.
In Nelson the court held a statute unconstitutional which named a circuit judge as a member of a Mediation Board of seven to determine an area dispute between two competing suppliers of electric energy. By the statute, two of the members of the board were appointed by the competitors and the other four were appointed by the governor from a list submitted by different segments of electric associations. The court held this was an administrative board, that the statute attempted to impose non-judicial duties on the judge which he shared with other administrative members so appointed by the executive department from a panel of persons having interests the same as disputants who could overrule his decision. We do not depart from that opinion which discusses and refers to some authorities on the separation of powers; however, a different situation is presented in this appeal.
Here a petition signed by 5% of the qualified electors of the proposed district, with its content clearly set out in the Act and addressed to the circuit court, may be filed in the office of the clerk of courts of the
*406 county where the principal place of business of the district is to be located. The circuit judge to whom the petition is presented fixes a time and place of hearing which is published. At the hearing the judge makes a decision either approving or rejecting it. If approved, the clerk of courts notifies the auditors of each county involved who publish a notice of the election, prepare the ballots, etc. After the canvass of votes, the results are certified to the home clerk of courts; if the majority votes in favor of the formation of the district, the circuit judge is directed to make an order approving it. When the clerk files a certified copy of the order and petition with the secretary of state, "thereupon such district * * * shall be and constitute a body politic and corporate." SDCL 49-35-18.
We have dealt with the appellants' complaint, repeated on this issue, that the court is prohibited from considering public convenience and necessity and is limited to considering whether the petition conformed to the Act and the district formed in good faith; the argument now made is the Act imposes added duties on the court to consume its time.
Courts in many proceedings of necessity must determine if pleadings or evidence conform to procedural and substantive law requirements and whether, in appropriate actions, referendum and nominating petitions or those pertaining to school or municipal matters contain the required number of signatures. We conclude the Act confers duties judicial in nature that may be delegated to the courts.[5]

VI.
Finally, it is urged the Act contains none of the judicial safeguards required by the due process clause of the South Dakota Constitution (Art. VI, § 2) or the equal protection clause in the Fourteenth Amendment of the U.S. Constitution. The basis of this claim is that SDCL 49-35-14 provides the signer of or the person filing the petition may appeal to the Supreme Court from the order or decision of the circuit court within 60 days after the filing thereof in the same manner as an appeal from an intermediate order as provided in §§ 15-26-9 to 15-26-17, but does not provide that other persons who might appear at the hearing and oppose the formation of the district may appeal. Appellants who were nonsigners of the petition appeared at the hearing and were represented by counsel. As appellants' brief relates "the Circuit Court proceeded to consider the petitions and accept testimony and exhibits thereon (and) appellants, through their counsel, John H. Zimmer, were permitted by the court to examine witnesses, exhibits, and participate fully in the hearing as parties". The court denied appellants' motion to dismiss the petition and entered the decision and order from which they appeal.
Appellants urge SDCL 49-35-14 which provides the person filing or signing the petition may appeal to the Supreme Court is contradictory to SDCL 15-26-1 which reads:
"Appeals to the Supreme Court from the circuit court * * * may be taken as provided in this title from:
(1) A judgment * * *
(4) Any final order affecting a substantial right, made in special proceedings * * *".
They then contend that by providing proponents may appeal in SDCL 49-35-14 without also there providing a right of appeal to objectors is discriminatory, denies nonsigners equal protection and is thus unconstitutional.
*407 Where statutes appear to be contradictory it is the duty of the court to reconcile them and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. North Central Investment Co. v. Vander Vorste, 81 S.D. 340, 135 N.W.2d 23. Statutes are to be construed with a view of upholding their constitutionality and it should not be presumed the legislature intended to violate the constitution in enacting a statute, and further, if by any reasonable interpretation of its language, such conclusion can be avoided it is the duty of the court to avoid it. Fremont, E. & M. V. R. Co. v. County of Pennington, 22 S.D. 202, 116 N.W. 75. From a reading of the Act it is apparent the legislature outlined a procedure that was favorable to the formation of power districts and to that end included a specific clause that the proponents of the district might appeal from the circuit court order even in the event no appearance or objection was made at the hearing. The clause merely made that right clear which proponents may have had under SDCL 15-26-1. This clause did not limit or amend any right of appeal given in the last cited section.
While it may be of some doubt appellants come within the terms of SDCL 15-26-1 in that the order appealed from may not be a final "order affecting a (their) substantial right" we have nevertheless, in accord with the stated desire of all parties thereto for a decision on the merits, assumed for the purpose of appeal that they are such persons and thus determined the appeal on the merits.
The order appealed from is therefore affirmed.
ROBERTS, P. J., and RENTTO and HOMEYER, JJ., concur.
COOPER, Circuit Judge, sitting for HANSON, J., disqualified.
COOPER, Circuit Judge, dissents.
COOPER, Circuit Judge (dissenting).
Legislative power necessarily must be limited by the criterion that the exercise thereof fulfills a public purpose, or as it is usually stated, that public convenience and necessity is served. It is not questioned that the generation and distribution of electric power is subject to public regulation and control. Less clear are limitations upon the state engaging in the business. Generally, it is stated that there must be a showing of public convenience and necessity, and the enabling legislation provides for an administrative determination, after a full factual hearing, that there is a genuine need for service, and that there will be no duplication of existing facilities. This necessarily must be determined on a case by case basis based upon facts then existing, and it is no answer that "the legislature has determined from its own methods of hearings, knowledge and experience that the need exists," since the legislature cannot provide such type of hearing.
That the legislature is not a proper forum for determining public necessity and convenience is clearly demonstrated by the fact that this legislation was passed by a special session of the legislature convened for this purpose in 1950, but the authorization for which it was then determined an urgent need existed was not invoked for almost 20 years. This district must still meet the issue of public convenience and necessity, which has yet to be determined by the investing public. Without the power of taxation or the use of state credit, which the statute specifically denies it, the district must sell its securities on the open market, and those who assess the risk involved will determine whether this public power district can make the grade as a viable business. Hence, the verdict of the market place is yet to be heard.
In my judgment, the failure to provide a forum for the determination of public convenience and necessity invalidates the legislation here in issue.
NOTES
[1] The Consumers Power District Act was originally enacted in 1950 as Ch. 17 of the 1950 Special Session Laws and thereafter was SDC 1960 Supp. 52.17 and is now SDCL 49-35 through SDCL 49-40; the latter citations will be used in this opinion.
[2] Appellants have referred to some of the states having similar Acts which, with others cited herein and in 29 C.J.S. Electricity § 6, are: Arizona Revised Statutes, Title 30, Ch. 2 (§ 30-301 through 30-439); Mississippi Code, 1942, Title 21, Ch. 6 (§§ 5429-5552); Revised Statutes of Nebraska, 1943, Ch. 70, Arts. 6 and 8 (§ 70-601 et seq. and § 70-801 et seq.); Nevada Revised Statutes, Ch. 309; Tennessee Code (T.C.A.), Title 6, Ch. 27 (§ 6-2701 through § 6-2705); Revised Code of Washington (RCWA), Title 54, (§ 54.08 et seq.); and Wyoming Statutes, 1957, Ch. 5, Arts. 1 and 2 (§ 37-72 et seq.).
[3] Other statutes permit issuance of revenue bonds in payment of such utility, SDCL 9-40, which are not debts or obligations of the city. See Mettet v. City of Yankton, 71 S.D. 435, 25 N.W.2d 460. The management is by the governing body or may be by a municipal utility board appointed by it. SDCL 9-39; Rhyne, Municipal Law, § 23-1.
[4] There may be some question the appeal is premature for if the electors at the subsequent election required by the Act had defeated the proposal the whole proceeding would have been nullified and the question moot; we are advised the proposal was approved by a substantial majority. It is only on approval of the formation of the district by the judge after the election and filing a certified copy thereof and the petition with the Secretary of State that the district becomes a body politic and corporate. SDCL §§ 49-35-16, 49-35-18.
[5] In Wyoming (Ch. 5, Arts. 1 and 2, Wyoming Statutes, 1957, § 37-72 to 37-120) petitions to organize power districts are filed with, heard and organized by the District Court. See In Re Sheridan County Power Dist., 61 Wyo. 365, 157 P.2d 997.