1999 ME 161

**PORTLAND WATER DISTRICT**

v.

**TOWN OF STANDISH et al.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1999.

Decided Nov. 16, 1999.

Michael T. Healey (orally), Jacqueline W. Rider, Verrill & Dana, LLP, Portland, for plaintiff.

Kenneth M. Cole III (orally), Sally J. Daggett, Jensen Baird Gardner & Henry, Portland, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The Town of Standish appeals from a judgment entered in the Superior Court (Cumberland County, *Cole, J.*) following a trial in which the court determined that, with the exception of five disputed elements, the Sebago Lake Water Treatment Facility (the treatment facility) recently constructed by the Portland Water District was exempt from municipal property taxes by virtue of 36 M.R.S.A. § 651(1)(E) (1990).[1] The District in turn cross appeals from an earlier summary judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) determining that the treatment facility was not tax-exempt pursuant to the provisions of 36 M.R.S.A. § 651(1)(D) (1990)[2] and that certain supplemental assessments issued by the Town were valid pursuant to 36 M.R.S.A. § 713 (1990).[3] The District also appeals from the denial of its post-trial motion to amend findings. On appeal, the District repeats the argument set forth in its motion that our opinion in *Town of Embden v. Madison Water District*, 1998 ME 154, 713 A.2d 328, establishes that the entire treatment facility is tax-exempt pursuant to section 651(1)(E). We agree that *Embden* is controlling and we vacate the judgment.

[¶ 2] The relevant facts may be summarized as follows: The District, a public municipal corporation, owns property in Standish that it uses to provide water service to Standish and nine other Cumberland County municipalities. Although the District's legislative charter includes Standish within the District's service area, the District's territory is defined as Portland, South Portland, Westbrook, Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, and Windham. *See* P. & S.L.1975, ch. 84, § 1. The District has exclusive authority to serve the municipalities within its service area and currently serves approximately ten percent of Standish's population. *See id.* § 2(B).

[¶ 3] In 1992 and 1993, the District decided to change its method of disinfecting water from chlorination to ozone treatment. The District constructed an ozone treatment plant on Sebago Lake in Standish to replace its chlorination plant in Gorham. This treatment facility, completed in 1994, produces approximately 21 million gallons of disinfected drinking water per day.

[¶ 4] In 1993, the assessor for Standish assessed the treatment facility on a cost basis. Although the total cost was approximately $23 million, he concluded that all but an approximately $4 million portion of the facility was tax exempt pursuant to section 651(1)(E). In August of 1995, Standish hired a new assessor. Shortly

---

1. The statute exempts: "The pipes, fixtures, hydrants, conduits, gatehouses, pumping stations, reservoirs and dams, used only for reservoir purposes, of public municipal corporations engaged in supplying water, power or light, if located outside of such public municipal corporation ...." 36 M.R.S.A. § 651(1)(E) (1990).

2. The statute provides that "[t]he property of any public municipal corporation of this State appropriated to public uses, if located within the corporate limits and confines of such public municipal corporation" is exempt from taxation. 36 M.R.S.A. § 651(1)(D) (1990).

3. The statute provides, in pertinent part: "Supplemental assessments may be made within 3 years from the last assessment date whenever it is determined that any estates liable to taxation have been omitted from assessment or any tax on estates is invalid or void by reason of illegality, error or irregularity in assessment." 36 M.R.S.A. § 713 (1990).

after beginning employment, he reassessed all of the property within Standish. After reviewing data provided to him by the District, he concluded that the prior assessor had incorrectly applied section 651(1)(E) and that "the disinfection facility does not qualify for property tax exemption." The assessor included all property related to the disinfection facility in the District's assessment and issued supplemental assessments for the 1993, 1994, and 1995 tax years.

[¶ 5] Following this reassessment, the District filed an action in Superior Court, seeking a declaratory judgment pursuant to 14 M.R.S.A. § 5951 et seq. and M.R. Civ. P. 57. The District maintained that the entire treatment facility was tax-exempt pursuant to section 651(1)(D), or, in the alternative, that all or part of the treatment facility was tax-exempt pursuant to section 651(1)(E). In addition, the District argued that the supplemental assessments were illegal and void because they did not comply with the requirements of 36 M.R.S.A. § 713. The District and Standish filed cross motions for summary judgment. The court granted Standish's motion in part, holding that section 651(1)(D) did not apply because the phrase "corporate limits and confines" in the statute was co-extensive with the legislative definition of the District's territory. Because the treatment facility was outside the District's territory, it was not tax-exempt under section 651(1)(D). The court concluded, however, that the assessor had misinterpreted section 651(1)(E),[4] and ordered a reassessment of the property.

[¶ 6] In his reassessment, the assessor adopted a restrictive view of section 651(1)(E), reasoning that the Legislature had not intended the section to exempt treatment plants. Consequently, he concluded that the treatment facility was taxable. Following this reassessment, the District and Standish agreed on the tax-able status of several elements of the treatment facility, a schedule of which was titled "Joint Exhibit B of Items Not In Dispute." Forty-nine additional elements remained in dispute and were listed in "Joint Exhibit A of Items In Dispute." Following a trial, the court held that all but five of the disputed items were tax-exempt. Following the entry of judgment, the District filed a motion to amend findings, arguing that all of the treatment facility was tax-exempt under section 651(1)(E) as interpreted in *Embden*. The court denied the motion, and the matter is now before us on appeal.

■ [¶ 7] The District presses the argument in its cross-appeal that the treatment facility is located within its "corporate limits and confines," as that phrase is used in section 651(1)(D), and that the Superior Court consequently erred when it denied the District's motion for summary judgment. We review the entry of a summary judgment for errors of law *de novo*. *See H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996).

[¶ 8] We have not previously interpreted the phrase "corporate limits and confines" in section 651(1)(D). The parties point to three cases—*Greaves v. Houlton Water Co.*, 140 Me. 158, 34 A.2d 693 (1943) (*Greaves I*), *Greaves v. Houlton Water Co.*, 143 Me. 207, 59 A.2d 217 (1948) (*Greaves II*), and *Inhabitants of Boothbay v. Inhabitants of Boothbay Harbor*, 148 Me. 31, 88 A.2d 820 (1952)—that each side claims supports its position on this issue. None of these cases deal specifically with the phrase "corporate limits and confines" because in each case we were only asked to determine the taxable status of property under the predecessor to section 651(1)(E). *See Greaves I*, 140 Me. at 159–60, 34 A.2d at 694; *Greaves II*, 143 Me. at 208–09, 59 A.2d at 218; *Boothbay*, 148 Me. at 32, 88 A.2d at 821. Nonetheless, in all three cases the question of the territorial limits

---

4. In his initial assessment, the assessor assumed that the phrase "used only for reservoir purposes" in section 651(1)(E) modified all the items listed in that section.

of the municipal corporations was central to the issue of whether the corporations were public or private and, consequently, whether the exemption in the predecessor to section 651(1)(E) was available to them.

[¶ 9] In *Greaves I*, we ruled that a municipal corporation acting to benefit those outside its legislatively granted authority acted as a private rather than a public corporation. *See Greaves I*, 140 Me. at 165, 34 A.2d at 696. Five years later, we held that the same corporation was nonetheless a public municipal corporation when benefitting the use outside its boundaries because the Legislature had amended the water company's charter to deem it to be a public municipal corporation. *See Greaves II*, 143 Me. at 213, 59 A.2d at 220. In a later case, we held that property located in Boothbay and used by Boothbay Harbor to provide service to both towns was tax-exempt as the property of a public municipal corporation. *See Boothbay*, 148 Me. at 38, 88 A.2d at 823. In this instance, the Legislature had specifically authorized Boothbay Harbor to provide service to Boothbay.

[¶ 10] These three cases explain the Legislature's placement of Standish within the service area but outside the territory of the District. *Greaves I* provides a strict definition of a *public* municipal corporation. Municipal corporations that act outside of their territorial boundaries must do so for the benefit of the citizens within those boundaries; "the public outside [the municipal corporation] may [only] be incidentally benefitted . . . ." *See Greaves I*, 140 Me. at 164, 34 A.2d at 696. *Greaves II* and *Boothbay* created an exception to that strict rule by allowing a municipal corporation to remain public even though it benefitted those outside of its territorial boundaries if the Legislature authorized the municipal corporation to provide those extraterritorial services. *See Greaves II*, 143 Me. at 211, 59 A.2d at 219; *Boothbay*, 148 Me. at 41–42, 88 A.2d

at 825. In the present case, the inclusion of Standish in the District's service area allows the District to fall within the *Greaves II* and *Boothbay* exception. It was not intended to expand the District's "corporate limits and confines" which the court correctly held was co-extensive with the District's territory.

[¶ 11] Having determined that the treatment facility is not entirely tax-exempt as property located within the District's "corporate limits and confines," we now turn to the question presented at trial: namely what portion, if any, of the treatment facility is exempt pursuant to section 651(1)(E).

[¶ 12] In *Embden* we noted that section 651(1)(E), while narrower than section 651(1)(D) that exempts both facilities and land, still grants broad exemptions to public municipal corporations for property used in providing important public services:

> The effect of the amendment [adding the predecessor to sections 651(1)(D) & (E) in 1911] was to make public municipal corporations responsible for the property tax on land owned outside of its corporate limits,[5] while retaining the tax-exempt status of components of the corporation's facilities used to provide valuable public services such as the delivery of water, power, and light.

*Embden*, 1998 ME 154, ¶ 8, 713 A.2d at 330. When the Legislature enacted section 651(1)(E) in 1911, it defined the parameters of the exemption by providing a then current list of necessary components of a safe water treatment facility. *See id.* ¶ 6, 713 A.2d at 330. We noted in *Embden* that a strict reading of the 1911 list, ignoring technological advances in safe water treatment, would frustrate legislative intent. *See id.* Reasoning that the Legislature did not intend to discourage investments in technology to make water safer by linking those investments with a loss of tax-exempt status, we held in *Embden* that

5. Although the District argued in its motion to amend findings that the land section under the treatment facility was also exempt under

*Embden,* it conceded at oral argument that § 651(1)(E) would not alter its responsibility for the property tax on its land in Standish.

section 651(1)(E) exempted all property that was an essential component of a modern water treatment facility.[6] *See id.* ¶ 8, 713 A.2d at 330.

[¶ 13] In the present case, all the components of the treatment facility have been itemized in Joint Exhibits A and B. We conclude that the components listed in the two exhibits are essential to building and operating a modern water treatment facility.[7] Consequently, the trial court erred in failing to rule that the treatment facility is tax-exempt in its entirety pursuant to section 651(1)(E). Because there is no taxable property, we have no occasion to consider the propriety of the supplemental assessments.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to enter a judgment consistent with the opinion herein declaring that the Sebago Lake Water Treatment Facility, exclusive of land, is tax exempt in its entirety.

---

**6.** In *Embden,* the procedural posture of the case made it unnecessary to determine whether any portion of the property in question was not an essential component of a modern water treatment facility. *See Embden,* 1998 ME 154, ¶ 8, n. 3, 713 A.2d at 330, n. 3.

**7.** The parties have debated whether various "soft costs"—such as bond and insurance costs, excavation and stripping costs, etc.—were properly classified as taxable or should have instead been included in the general valuation of the treatment facility. Because these costs are necessary for the construction of a safe water treatment facility, they are exempt under section 651(1)(E).